UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 13-cv-24568-JEM/CMM

Thomas Kraemer, an individual,

     Plaintiff,

vs.

Ace Insurance Company of the Midwest,
a foreign corporation, and Belfor USA
Group, Inc., d/b/a Belfor Property
Restoration, a foreign corporation,

     Defendant

---

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Thomas Kraemer ("Kraemer"), through counsel, sues ACE Insurance Company of the Midwest ("ACE") and Belfor USA Group, Inc., d/b/a Belfor Property Restoration ("Belfor") and alleges:

### Parties, Jurisdiction and Venue

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441, as the Parties are of diverse citizenship, the amount in controversy exceeds $75,000.00 and ACE removed this case from Florida state court on December 19, 2013.

2.     Kraemer is an individual, *sui juris*, residing in Florida.

Kraemer v. ACE and Belfor
Case No. 13-cv-24568-JEM/CMM
Amended Complaint

3.      ACE is an insurance company, organized under the laws of Indiana with its principal place of business in Pennsylvania, conducting business in Miami-Dade County, Florida.

4.      Belfor is a foreign corporation, organized under the laws of Colorado with its principal place of business in Michigan, conducting business in Miami-Dade County, Florida including the provision of property restoration services to Kraemer on behalf of ACE.

5.      All conditions precedent to this action have been performed, waived, would prove futile if attempted, or have otherwise occurred.

### Allegations Common to All Counts

6.      In return for premiums paid, ACE issued a property insurance policy to Kraemer (the "Policy"), bearing policy number 268-03-58-68H, with effective dates of coverage from May 10, 2012 through May 10, 2013.  A genuine copy of the Policy is attached hereto as Exhibit 1.

7.      The Policy provides indemnity for losses resulting from damage to the home located at 610 West Dilido Drive, Miami Beach, Florida 33139  (the "Residence"), unless the cause of the loss is excluded.

8.      On April 2, 2013 there was a fire which damaged the Residence and Kraemer's personal property. ("Loss")

9.      Kraemer timely reported the Loss and met all other conditions to the payment by ACE of insurance proceeds to Kraemer.

10.     In connection with the covered Loss, ACE directed Belfor to:

   a.   Respond to the Loss;

SIEGFRIED, RIVERA, HYMAN, LERNER, DE LA TORRE, MARS & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, ELEVENTH FLOOR, CORAL GABLES, FL. 33134-5108 • 305-442-3334 • FAX 305-443-3292

Kraemer v. ACE and Belfor
Case No. 13-cv-24568-JEM/CMM
Amended Complaint

---

     b.   Attempt to mitigate further damage by trying to dry the Residence;

     c.   Remove any personal property which might have been further damaged if left in the Residence, so as to preserve it;

     d.   Demolish those portions of the Residence which were damaged beyond repair; and;

     e.   Provide other services to the insured property.

11.    When Belfor arrived at the Residence, its representative requested that a person present at the Residence (not the insured) sign a "Work Authorization Form". A genuine copy of the Work Authorization Form is attached as Exhibit 2. The "rate schedule" referenced in the Work Authorization Form as "Attached as 'B'" was not attached and is not in the possession of Kraemer. Neither were the "following pages" referenced in the document attached and are not in the possession of Kraemer.

12.    Belfor advised the person to whom it presented the incomplete Work Authorization Form that Belfor was a preferred provider of services on behalf of ACE, that the Form was routine and part of the way ACE did business in responding to types of losses including the Loss.

13.    Kraemer was not at the Residence when the incomplete Work Authorization Form was presented for execution and did not execute or authorize anyone to execute the Work Authorization Form on his behalf.

14.    Kraemer and his contractor have been repeatedly assured that Belfor was working at the Residence at ACE's direction and Kraemer did not retain or intend to retain Belfor to act on his behalf.

SIEGFRIED, RIVERA, HYMAN, LERNER, DE LA TORRE, MARS & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, ELEVENTH FLOOR, CORAL GABLES, FL 33134-5108 • 305-442-3334 • FAX 305-443-3292

Kraemer v. ACE and Belfor
Case No. 13-cv-24568-JEM/CMM
Amended Complaint

15. Belfor has never invoiced Kraemer for any services it has provided.

## Count I – Breach of Contract (ACE)

Kraemer reasserts paragraphs 1 through 15 as if fully set forth herein, and further alleges:

16. The Policy provides indemnity for:

    a. The replacement cost to restore damage to the Residence

    b. The replacement cost to restore or replace damage to personal property;

    c. Additional Living Expenses;

    d. Lost income; and

    e. Loss-Related Expenses.

17. Fire is not an excluded cause pursuant to the terms of the Policy.

18. The damage caused to the Residence and the personal property contained therein is a covered loss.

19. ACE has made partial payments to Kraemer for:

    a. The replacement cost to restore damage to the Residence

    b. The replacement cost to restore or replace damage to personal property;

    c. Additional Living Expenses; and

    d. Loss-Related Expenses.

20. Pursuant to the terms of the Policy, ACE has failed to indemnify Kraemer, in full, for the loss:

    a. ACE has failed to remit payment for all replacement costs necessary to restore damage to the Residence, or

- 4 -

Kraemer v. ACE and Belfor
Case No. 13-cv-24568-JEM/CMM
Amended Complaint

---

    b.   ACE has failed to remit payment for all replacement costs to restore or replace damage to Kraemer's personal property,

    c.   ACE has failed to remit payment to Kraemer for income lost as a result of the Loss; or

    d.   ACE has failed to remit payment for all Additional Living Expenses incurred.

21.    ACE's failures constitute a material breach of the Policy.

22.    On or about January 6, 2014, after the institution of this action, ACE made a further partial payment to Kraemer for money due on the claim, but which had been withheld by ACE, necessitating the institution of this action.  Under these circumstances, the payment conclusively establishes ACE's debt to Kraemer and Kraemer's entitlement to recover attorney fees from ACE.

23.    As a result of ACE's failure to pay his claim in full, Kraemer has been required to retain the undersigned law firm, to which he will be required to pay a reasonable attorney fee, which is recoverable pursuant to Fla. Stat. § 627.428.

WHEREFORE, Kraemer demands judgment against Defendant, ACE Insurance Company of the Midwest for damages, pre-judgment interest, post-judgment interest, attorney fees, costs and any other and further relief as this Honorable Court deems just and proper.

## Count II – Negligence (ACE)

Kraemer reasserts his allegations from paragraphs 1 through 18 as if fully set forth herein, and further alleges:

24.    ACE brought Belfor to the Residence and retained Belfor for the purpose of providing restoration services. By virtue of ACE directing Belfor to respond to the Loss and by

SIEGFRIED, RIVERA, HYMAN, LERNER, DE LA TORRE, MARS & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, ELEVENTH FLOOR, CORAL GABLES, FL 33134-5108 • 305-442-3334 • FAX 305-443-3292

Kraemer v. ACE and Belfor
Case No. 13-cv-24568-JEM/CMM
Amended Complaint

ACE's assurances to Kraemer that Belfor was working at the Residence at ACE's direction, ACE is responsible for the acts and omissions of Belfor, its agent.

25.     Upon undertaking its work at the Residence, Belfor owed a duty to Kraemer to perform its work with the care of a similarly situated restoration company in Southeast Florida.

26.     Belfor breached its duty of care by:

    a.   Damaging the Residence;

    b.   Damaging Kraemer's personal property;

    c.   Delaying the restoration and extending the time when Kraemer could not return to the Residence or

    d.   Losing items of Kraemer's personal property.

27.     The negligence of Belfor caused damage to Kraemer, for which ACE is answerable.

28.     ACE is responsible for damage caused to Kraemer by ACE's agent, Belfor.

WHEREFORE, Kraemer demands judgment against Defendant, ACE Insurance Company of the Midwest for damages, pre-judgment interest, post-judgment interest, costs and any other and further relief as this Honorable Court deems just and proper.

## Count III – Negligence (Belfor)

Kraemer reasserts his allegations from paragraphs 1 through 23, 25 and 26 as if fully set forth herein, and further alleges:

29.     Whether or not Belfor was ACE's agent (and in the alternative, if Belfor was not ACE's agent), Belfor owed a duty to Kraemer, upon undertaking its work at the Residence, to perform its work with the care of a similarly situated restoration company in Southeast Florida.

- 6 -

Kraemer v. ACE and Belfor
Case No. 13-cv-24568-JEM/CMM
Amended Complaint

30.    Belfor's breach of that duty, as set forth in paragraph 26 above, caused damage to Kraemer.

WHEREFORE, Kraemer demands judgment against Defendant, Belfor USA Group, Inc. for damages, pre-judgment interest, post-judgment interest, costs and any other and further relief as this Honorable Court deems just and proper.

### Count IV – Breach of Contract (Alternative Count Against Belfor)

Kraemer reasserts his allegations from paragraphs 1 through 18 as if fully set forth herein, and further alleges:

31.    Count IV is asserted in the alternative in the event that it is determined that ACE is not responsible to Kraemer for the acts and omissions of Belfor, based upon a had a contractual relationship with Belfor.

32.    Belfor's contractual relationship, if established, required it to assist Kraemer in repairing the Residence and preserving his personal property.

33.    Belfor breached its contract by:

   a.  Damaging the Residence;

   b.  Damaging Kraemer's personal property; or

   c.  Losing items of Kraemer's personal property.

34.    Belfor's breach damaged Kraemer.

WHEREFORE, Kraemer demands judgment against Defendant, Belfor USA Group, Inc. for damages, pre-judgment interest, post-judgment interest, costs and any other and further relief as this Honorable Court deems just and proper.

SIEGFRIED, RIVERA, HYMAN, LERNER, DE LA TORRE, MARS & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, ELEVENTH FLOOR, CORAL GABLES, FL 33134-5108 • 305-442-3334 • FAX 305-443-3292

Kraemer v. ACE and Belfor
Case No. 13-cv-24568-JEM/CMM
Amended Complaint

## DEMAND FOR TRIAL BY JURY

Kraemer hereby demands trial by jury of all issues so triable.

SIEGFRIED, RIVERA, HYMAN, LERNER, DE LA TORRE, MARS & SOBEL, P.A., ATTORNEYS AT LAW
201 ALHAMBRA CIRCLE, ELEVENTH FLOOR, CORAL GABLES, FL 33134-5108 • 305-442-3334 • FAX 305-443-3292

Kraemer v. ACE and Belfor
Case No. 13-cv-24568-JEM/CMM
Amended Complaint

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished to the

Clerk of the Court for filing and electronic service this 13th day of March, 2014 on Kellyn J.

W. Muller, Esquire, **counsel for ACE Insurance Company of the Midwest**,

(kmuller@cozen.com), Cozen O'Connor, One North Clematis Street, Suite 510, West Palm

Beach, Florida 33402.

Respectfully submitted,

SIEGFRIED, RIVERA, HYMAN, LERNER,
DE LA TORRE, MARS & SOBEL, P.A.
**Attorneys for Kraemer**
201 Alhambra Circle
Eleventh Floor
Coral Gables, Florida
33134-5108
Phone: (305) 442-3334
Fax: (305) 443-3292
Email: ssobel@srhl-law.com
Email: mclark@srhl-law.com

By:/s/Stuart Sobel
    Stuart Sobel, Esquire
    Florida Bar Number: 262382
    B. Michael Clark, Jr., Esquire
    Florida Bar Number: 31797

H:\LIBRARY\CASES\6647\2130584\2XR5415.DOCX

- 9 -

268035868 02 012

THOMAS D KRAEMER
610 W DILIDO DR
MIAMI BEACH          FL     33139-1158



**POLICY NUMBER: 268-03-58-68**

## POLICY SUMMARY - POLICY CHANGES MADE AS OF 01/21/2013

Policy Issued by **ACE INSURANCE COMPANY OF THE MIDWEST** – an ACE Group Company.

### NAMED INSURED:

THOMAS D KRAEMER

610 W DILIDO DR

MIAMI BEACH        FL     33139-1168

### AGENT OR BROKER:

FRANK CRYSTAL & CO INC

32 OLD SLIP

NEW YORK            NY     10005-3500
Telephone: (212) 344-2444
PRODUCER CODE: 01-1379

This package contains an update to your Insurance Policy. Your bill will be mailed under separate cover.

| COVERAGE | POLICY NUMBERS | EFFECTIVE DATES | | PREMIUMS |
|---|---|---|---|---|
| HOME | 268-03-58-68H | 05/10/2012 - | 05/10/2013 | $ 34,634.64 |
| AUTO | 268-03-58-68A | 05/10/2012 - | 05/10/2013 | $ 8,841.46 |

TOTAL RETURN POLICY PREMIUM        $          468.86
        10% PACKAGE CREDIT APPLIED TO FLORIDA LOCATION(S)

**POLICY NUMBER: 268-03-58-68H**

H 0208

## HOME DECLARATIONS PAGE

Policy Issued by **ACE INSURANCE COMPANY OF THE MIDWEST** - an ACE Group Company.

| NAMED INSURED: | | | AGENT OR BROKER: | | |
|---|---|---|---|---|---|
| THOMAS D KRAEMER | | | FRANK CRYSTAL & CO INC | | |
| 610 W DILIDO DR | | | 32 OLD SLIP | | |
| MIAMI BEACH | FL | 33139-1158 | NEW YORK<br>Telephone: (212) 344-2444 | NY | 10005-3500 |

Policy Period From: 05/10/2012   To: 05/10/2013   12:01 A.M. standard time at the principal residence

POLICY CHANGES MADE AS OF 01/21/2013  . PLEASE ATTACH TO YOUR POLICY.
HOME COVERAGE REVISED

**COVERED LOCATIONS**

LOCATION   3
610 W DILIDO DR

MIAMI BEACH     FL 33139-1158

1 FAMILY P_CONCRETE   DWELLING
BUILT IN 2011  SECONDARY
COUNTY   MIAMI-DADE
TERRITORY 003
PROTECTION CLASS 001

**COVERAGE DESCRIPTION LIMITS          LOCATION   3**

| | |
|---|---|
| DWELLING | 3,306,000 |
| TOTAL LOCATION LIMIT | 6,612,000 |
| PERSONAL LIABILITY | 500,000 |
| MEDICAL PAYMENTS TO OTHERS | 10,000 |
| DEDUCTIBLE | 25,000 |
| **HURRICANE DEDUCTIBLE** | **5%** |
| **(DOLLAR AMOUNT)** | **165,300** |
| LAW AND ORDINANCE | 25% |

| | |
|---|---|
| TOTAL ANNUAL HOME PREMIUM | $34,634.64 |
| RETURN PREMIUM | $468.86 |

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 4 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 4 of 51

**POLICY NUMBER: 268-03-58-69H**

H 0208

| PREMIUMS | LOCATION   3 |
|---|---|
| LOCATION PREMIUM | 33554.00 |
| OPTIONAL COVERAGES | 300.00 |
| ASSESSMENTS: | |
| CITIZENS PROPERTY INSURANCE | |
| CORPORATION EMERGENCY | |
| SURCHARGE | 338.54 |
| FLORIDA HURRICANE CATASTROPHE | |
| FUND EMERGENCY SURCHARGE | 440.10 |
| FLORIDA EMERGENCY MANAGEMENT | |
| PROTECTION AGENCY FUND | |
| SURCHARGE | 2.00 |
| | |
| TOTAL LOCATION PREMIUM | $34634.64 |

| DISCOUNT INFORMATION | LOCATION  3 |
|---|---|
| LOSS PREVENTION  CREDIT - TOTAL % | 5% |
| EXTERNAL PERIMETER SECURITY | X |
| WIND CREDIT - TOTAL | 74% |
| BCEG | 6% |
| WIND MITIGATION TOTAL | 68% |
| ROOF SHAPE | OTHER |
| ROOF DECK | RCR |
| OPENING PROTECTION | WINDOWS |
| TERRAIN | HVHZ |
| WIND SPEED | ANY |
| IPD | ENGL |
| WBR | YES |
| SWR | NO |
| BURGLAR ALARM CREDIT | 5% |
| FIRE ALARM CREDIT | 5% |
| PERSONAL UMBRELLA CREDIT | 5% |
| VALUABLES CREDIT | 5% |
| NEW HOME CREDIT | 16% |
| BUILDING CODE EFFECTIVENESS  UPGRADE CREDIT | 6% |
| (SEE ADDITIONAL POLICY INFORMATION) | |

**MORTGAGEE**

LOCATION   3
BNY MELLON, NA
ISAOA
PO BOX 57046

IRVINE        CA 92619-7046

LOAN NUMBER 2020068959

POLICY NUMBER: 268-03-58-68H                                          H 0208

**OPTIONAL COVERAGES**
PROPERTY REMEDIATION AND LIMITED LIABILITY COVERAGES FOR ESCAPED LIQUID FUEL
   LOCATION 3

                          POLLUTION LIABILITY COVERAGE

        COVERAGE                    BASIC LIMITS
        LIQ FUEL REM                $10,000
        FUEL LIAB                   $500,000

LIMITED PROPERTY COVERAGE FOR FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE
   $50,000 EACH COVERED LOSS ($50,000 POLICY AGGREGATE)
        LOCATION 3


EQUIPMENT BREAKDOWN COVERAGE
   LOCATION 3
   COVERAGE LIMIT $250,000
   DEDUCTIBLE $1,000


                                         LOC 3
   SINKHOLE LOSS COVERAGE                 NO

**POLICY FORMS AND ENDORSEMENTS**

                    LOCATION 3

   ACE01-0208           ACE INA PRIVACY STATEMENT
   ACE11-0208           IMPORTANT NOTICE
   ACE24-0711           RENEWAL BUSINESS NOTICE

**POLICY NUMBER: 268-03-58-68H**                                            H 0208

**POLICY FORMS AND ENDORSEMENTS**

LOCATION  3

| | | |
|---|---|---|
| * | ACE36-1208 | HURRICANE LOSS MITIGATION DISCOUNT NOTICE |
| | ACE37-1208 | CHECKLIST OF COVERAGE |
| | ALL-20887-1006 | PRODUCER COMPENSATION PRACTICES & POLICIES |
| | ALL-21101-1108 | TRADE OR ECONOMIC SANCTIONS ENDORSEMENT |
| * | CC-26082A-0710 | SIGNATURES |
| | HOME ACE-0208 | HOME CONTRACT |
| | HOME137 ACE-0208 | ESCAPED LIQUID FUEL PROPERTY AND LIAB. COV. |
| | HOME138 ACE-0508 | LIMITED COVERAGE ON FUNGI, WET OR DRY ROT |
| | HOME25 ACE-0509 | FLORIDA HOME POLICY OUTLINE |
| | HOME27 ACE-0510 | FLORIDA HOME ENDORSEMENT |
| | HOME31 ACE-0208 | FLORIDA WIND, EXTERIOR PAINT OR WATER EXCL |
| | HOME35 ACE-0208 | FLORIDA HURRICANE PERCENT DEDUCTIBLE-DWELLING |
| | HOME40 ACE-0509 | FL POLICYHOLDER NOTICE-HURRICANE DED OPTIONS |
| | HOME43 ACE-0208 | FLORIDA DISCLOSURE NOTICE |
| | HOME5 ACE-0208 | ADDITIONAL INSURED - RESIDENCE COVERAGE |
| * | HOME188 ACE-0212 | EQUIPMENT BREAKDOWN COVERAGE |

* DENOTES COPY OF FORM ATTACHED

**ADDITIONAL POLICY INFORMATION**

ADDITIONAL INSURED
  LOCATION  3
  THOMAS D KRAEMER TRUST
  AND ADAM MILLER
  810 W DILIDO DR

  MIAMI BEACH       FL 33139-1158

HURRICANE PREMIUM ITEMIZATION NOTICE

THE PORTION OF YOUR PROPERTY PREMIUM THAT REPRESENTS OUR HURRICANE EXPERIENCE IN
YOUR TERRITORY IS:

| | HURRICANE PREMIUM | NON-HURRICANE PREMIUM |
|---|---|---|
| LOCATION  3 | $27,548.00 | $8,609.00 |

**POLICY NUMBER: 268-03-58-68H**

H 0208

ADDITIONAL POLICY INFORMATION

FLORIDA MARKET EQUALIZATION SURCHARGE

SECTION 627.3512 OF THE FLORIDA INSURANCE CODE SPECIFIES THAT INSURERS MAY
RECOUP ASSESSMENTS FROM CITIZENS PROPERTY INSURANCE CORPORATION
AND FLORIDA CATASTROPHE FUNDS VIA A RATE FACTOR THAT WILL EXPIRE WHEN
ASSESSMENT AMOUNTS HAVE BEEN FULLY COLLECTED.

| LOCATION | 3 |
|---|---|
| CITIZENS PROPERTY INSURANCE CORPORATION EMERGENCY SURCHARGE | $338.54 |
| FLORIDA HURRICANE CATASTROPHE FUND EMERGENCY SURCHARGE | $440.10 |
| FLORIDA SURCHARGE TOTALS | $778.64 |

BUILDING CODE EFFECTIVENESS GRADE PROGRAM NOTICE

A PREMIUM CREDIT IS AVAILABLE TO RESIDENCES IN COMMUNITIES WHICH MEET THE
CRITERIA FOR THE BUILDING CODE EFFECTIVENESS GRADING PROGRAM. THIS PROGRAM
LLOWS FOR CREDITS RANGING FROM 1% TO 8% OR A SURCHARGE OF 1%. THE FOLLOWING
PERCENTAGE HAS BEEN APPLIED TO YOUR POLICY.
LOCATION   3 CREDIT OF  6%.

PACKAGE POLICY NUMBER - 268035867

01/24/2013

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 8 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 8 of 51

Case 1:13-cv-24568-JEM   Document 18   Entered on FLSD Docket 03/13/2014   Page 18 of 61
Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 9 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 9 of 51

## SIGNATURE ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| THOMAS D KRAEMER | | | |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| | 268035868 | 05/10/2012   to   05/10/2013 | 01/21/2013 |
| Issued By (Name of Insurance Company) | | | |
| ACE INSURANCE COMPANY OF THE MIDWEST | | | |

Insert the policy number. The remainder of the information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

ACE INSURANCE COMPANY OF THE MIDWEST (A stock company)
129 N. 9th Street, Richmond, Indiana 47374-8002

CARMINE A. GIRARTI, Secretary

JOHN J. LUPICA, President

_____
Authorized Representative

CC-26062a (07/10) Ptd. in U.S.A.

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 10 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 10 of 51

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 11 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 11 of 51

## THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

## EQUIPMENT BREAKDOWN COVERAGE

This endorsement changes certain parts of *your* Home policy. Every coverage, *exclusion*, definition and rule that isn't changed by this endorsement remains the same.

Equipment Breakdown Coverage is subject to the *coverage limit* shown on the Declarations Page per *occurrence*.

Equipment Breakdown Coverage is subject to the *deductible* amount shown on the Declarations Page per *occurrence*.

With respect to Equipment Breakdown Coverage, it is agreed and understood *your* Home Policy is amended as follows:

### PART I: YOUR PROPERTY COVERAGE

### EXTRA BENEFITS

The following Extra Benefits are added:

1. **Loss Of Use**

   *We* will pay the following expenses incurred by *you* if *you* are unable to reside in *your residence* due to a covered *equipment breakdown* loss:

   **a. Additional Living Expense**

   If a covered *equipment breakdown* loss damages part of the *residence* making it not fit to live in, *we* cover any necessary increase in living expenses incurred by *you* so that *your* household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage.

   **b. Fair Rental Value**

   If a covered *equipment breakdown* loss damages part of the *residence* rented to others or held for rental by *you* making it not fit to live in, *we* cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

   Payment will be for the shortest time required to repair or replace such premises.

2. **Pollutant Clean Up And Removal**

   *We* will pay up to $5,000 for the pollutant clean up and removal for loss resulting from a covered *equipment breakdown* loss. *We* will not make any additional payments for pollutant clean up and removal under any other part of this policy.

3. **Expediting Expense**

   **a.** *We* will pay up to $5,000 for the expediting expense loss resulting from a covered *equipment breakdown* loss with respect to damaged *personal property* covered by this policy. *We* will pay the reasonable extra cost to:

   (1) Make temporary repairs;

   (2) Expedite permanent repairs; and

   (3) Expedite permanent replacement.

   **b.** Reasonable extra cost shall mean the extra cost of temporary repair and of expediting the repair of such damaged equipment, including overtime and the extra cost of express or other rapid means of transportation.

   **c.** *We* will not make any additional payments for temporary repairs under any other part of this policy.

HOME188 ACE-0212

Page 1 of 4

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 12 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 12 of 51

**4. Spoilage Coverage**

*We* will pay up to $5,000 for loss of perishable goods due to spoilage resulting from lack of power, light, heat, steam or refrigeration caused by a covered *equipment breakdown* loss to *personal property* covered by this policy.

## LOSSES WE'LL PAY FOR

LOSSES WE'LL PAY FOR includes *equipment breakdown*.

## LOSSES WE WON'T PAY FOR

(5) **Deterioration** does not apply to the extent coverage is provided by this Equipment Breakdown Coverage.

## PART III: TERMS AND CONDITIONS

## HOW MUCH WE'LL PAY

## YOUR PROPERTY COVERAGE

YOUR RESIDENCES AND PERSONAL PROPERTY is amended to include the following:

**LOSS SETTLEMENT**

1. *We* will pay to repair or replace covered property damaged by an *equipment breakdown*. *Our* payment will be the lesser of:
   a. The cost at the time of the *equipment breakdown* to repair the damaged covered property;
   b. The cost at the time of the *equipment breakdown* to replace the damaged covered property with property of like kind, capacity, size and quality;
   c. The amount *you* actually spend that is necessary to repair or replace the damaged covered property; or
   d. The Equipment Breakdown Coverage limit shown on the Declarations Page.
2. As respects covered property:
   a. If the cost of repairing or replacing only a part of the covered property is greater than:
      (1) The cost of repairing the covered property; or
      (2) The cost of replacing the entire covered property on the same site;
      we will pay the lesser amount.
   b. The repair parts or replacement covered property must be:
      (1) Of like kind, capacity, size and quality; and
      (2) Used for the same purpose.

## GLOSSARY

The following definitions are added:

1. *Equipment breakdown*.
   a. *Equipment breakdown* means:
      (1) Physical loss or damage both originating within:

(a) Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

   (i) Waste disposal piping;

   (ii) Any piping forming part of a fire protective system; and

   (iii) Any water piping other than:

      I. Boiler feed water piping between the feed pump and the boiler;

      II. Boiler condensate return piping; or

      III. Water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes.

   (b) All mechanical breakdown, electrical, electronic or fiber optic equipment; and

(2) Caused by, resulting from, or consisting of:

   (a) Mechanical breakdown;

   (b) Electrical or electronic breakdown; or

   (c) Rupture, bursting, bulging, implosion, or steam explosion.

b. *Equipment breakdown* does not mean:

   (1) Physical loss or damage caused by or resulting from any loss not covered, as described in Losses We Won't Pay For. However, if loss or damage not otherwise excluded results, then we will pay for such resulting damage; and

   (2) Loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss: fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, freezing, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water damage, earth movement and flood.

2. *Green* means products, materials, methods and processes certified by a *green authority* that conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize environmental impact.

3. *Green authority* means an authority on *green* buildings, products, materials, methods or process certified and accepted by Leadership in Energy and Environmental Design (LEED®), Green Building Initiative Green Globes®, Energy Star Rating System or any other recognized *green* rating system.

## GENERAL CONDITIONS

The following General Conditions are added:

1. **Territory**

   Equipment Breakdown Coverage does not extend beyond the *residence*.

2. **Environmental, Safety And Energy Efficiency Improvements**

   a. If covered property requires replacement due to an *equipment breakdown, we* will pay *your* additional cost to replace with equipment that is better for the environment, safer or more energy efficient than the equipment being replaced. However, *we* will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality.

   b. This General Condition:

      (1) Does not apply to any property to which actual cash value applies; or

      (2) Is not in addition to the limit of insurance that applies to the covered property or any other sublimit of this policy.

   c. *We* will not make any additional payments for additional costs for equipment that is better for the environment, safer or more energy efficient under any other part of this policy.

3. **Green Environmental And Efficiency Improvements**

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 14 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 14 of 51

**a.** If covered property requires repair or replacement due to an *equipment breakdown*, *we* will pay:

   **(1)** The lesser of the reasonable and necessary additional cost incurred by *you* to repair or replace physically damaged covered property with equipment of like kind and quality which qualifies as *green*. Like kind and quality includes similar size and capacity.

   **(2)** The additional reasonable and necessary fees incurred by *you* for an accredited professional certified by a *green authority* to participate in the repair or replacement of physically damaged covered property as *green*.

   **(3)** The additional reasonable and necessary cost incurred by *you* for certification or re-certification of the repaired or replaced covered property as *green*.

   **(4)** The additional reasonable and necessary cost incurred by *you* for *green* in the removal, disposal or recycling of damaged covered property.

**b.** *We* will not pay more than a maximum limit of $5,000 of what the cost would have been to repair or replace with equipment of like kind and quality inclusive of fees, costs, and any loss of use incurred as described above.

**c.** Green Environmental And Efficiency Improvements does not cover any of the following:

   **(1)** Any loss covered under any other section of this policy; or

   **(2)** Any cost incurred due to any law or ordinance with which *you* were legally obligated to comply with prior to the time of the equipment breakdown.

**d.** This General Condition is not in addition to the limit of insurance that applies to the covered property or any other sublimit of this policy.

**e.** *We* will not make any additional payments for green environmental and efficiency improvements under any other part of this policy.

Case 1:13-cv-24568-JEM   Document 18   Entered on FLSD Docket 03/13/2014   Page 24 of 61

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 15 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 15 of 51

# INTRODUCTION: IMPORTANT INFORMATION ABOUT YOUR HOME POLICY

## TABLE OF CONTENTS

| Section | Page |
| --- | --- |
| Introduction: Important Information About Your Home Policy | |
| Table Of Contents | 1 |
| Your Agreement With Us | 2 |
| How To Use This Policy | 2 |
| Who We Insure | 2 |
| **Part I: Your Property Coverage** | 3 |
| Residences and Personal Property | 3 |
| What We Cover | 3 |
| A. Your Residences | 3 |
| B. Your Personal Property | 4 |
| Losses We'll Pay For | 5 |
| Losses We Won't Pay For | 6 |
| Extra Benefits | 8 |
| A. Loss Of Use Of Your Residence | 8 |
| B. Credit Card, Fund Transfer Card, Forgery, Counterfeit Money and Home Banking | 8 |
| C. Mortgage Renegotiation Costs | 9 |
| D. Personal Computer Records | 9 |
| E. Loss-Related Expenses | 9 |
| F. Construction Standards | 10 |
| G. Arson Award | 10 |
| H. Lock Replacement | 10 |
| I. Food Spoilage | 10 |
| J. Loss Assessment | 10 |
| K. Identity Fraud Expenses | 10 |
| L. Kidnap And Ransom Expenses | 11 |
| M. Landlord's Furnishings | 11 |

| Section | Page |
| --- | --- |
| **Part II: Your Liability Coverage** | 11 |
| Liability and Medical Expenses | 12 |
| What We Cover | 12 |
| A. Personal Liability | 12 |
| B. Medical Expenses | 12 |
| Damages We'll Pay | 12 |
| Damages We Won't Pay | 12 |
| Extra Benefits | 15 |
| A. Legal Services | 15 |
| B. First Aid | 16 |
| C. Voluntary Payments | 16 |
| D. Loss Assessment | 16 |
| **Part III: Terms and Conditions** | 16 |
| How Much We'll Pay | 16 |
| Your Property Coverage | 17 |
| Your Residences and Personal Property | 17 |
| Your Liability Coverage | 18 |
| When We'll Pay | 18 |
| What To Do After an Occurrence or Loss | 18 |
| Glossary | 20 |
| General Conditions | 22 |

## YOUR AGREEMENT WITH US

This document is *your* actual homeowner insurance policy. The Declarations Page and any endorsements named on the Declarations Page are included in it. Throughout this policy, the words *you*, *your*, and *yours* mean each person named on the Declarations Page, and his or her spouse if they live together. The words *we*, *us*, *our*, and *ours* mean the company named on the Declarations Page.

This policy is a contract between *you* and *us*. *We* agree to give *you* the insurance described in this policy, in exchange for *you* paying *your* premium and following the rules of this policy.

*We* wrote *your* Home Policy in clear, plain English so *you* can easily understand it. Read it and become familiar with its terms. This can save *you* time and money in case of an accident or loss.

**Policy period.** *Your policy period* starts and ends at the times shown on the Declarations Page, unless this policy is cancelled by *you* or *us*. *We'll* pay only for *bodily injury*, *personal injury*, *property damage* or loss that takes place during the *policy period* and is caused by an *occurrence*.

**Definitions.** Some words and phrases need to be defined, so *you* can know exactly what *you're* insured for. *We* tell *you* these definitions in the Glossary at the end of this policy. When used throughout this policy, these defined words will appear in *italic typeface*, *like this*.

## HOW TO USE THIS POLICY

*We* hope *you* never have an *occurrence* or suffer any losses. But if *you* do, *our* job is to protect *you* against the financial consequences. *We* wrote *your* Home Policy to make it easy for *you* to know what *you're* covered against. After an *occurrence* or loss, simply answer these three questions:

**1.   Is the property or liability covered?**

*We* describe each coverage in sections called "What *We* Cover". To find out if *we* cover something *you* or a *family member* owns, read this section in "Part I: Your Property Coverage". To find out if *we'll* pay for damages or *medical expenses* after an accident, read this section in "Part II: Your Liability Coverage". *We* also cover many other expenses related to an *occurrence* or loss. *We* describe these in sections called "Extra Benefits".

**2.  Is it a type of occurrence or loss we won't pay for?**

In this policy *we* tell *you* about the *occurrences* and losses *we* won't pay for instead of the ones *we* will pay for.

When *we* tell *you* about each coverage, *we* describe certain circumstances when *we* won't pay. *We* call these circumstances *exclusions*. *You* are covered against risks of *direct loss* not mentioned in these *exclusions*.

Under "Your Property Coverage", *we* tell *you* these *exclusions* in sections called "Losses We Won't Pay For". Under "Your Liability Coverage", *we* tell *you* these *exclusions* in sections called "Damages We Won't Pay". *You'll* find a complete list of *exclusions* in these sections.

**3.   How much will we pay?**

*Your* coverage limits and deductibles are printed on *your* Declarations Page. At the end of *your* Home Policy, *we* tell *you* what these limits and deductibles mean in a section called "How Much We'll Pay". *We* also tell *you* the things *you* have to do after an *occurrence* or loss, and list some other rules that apply to *your* insurance.

## WHO WE INSURE

*Your* Home Policy provides insurance for *you* and most of the people who are closest to *you*. Naturally, *we* have to carefully define who these people are. When *we* tell *you* about each coverage, *we* tell *you* exactly who is an *insured person* under that coverage. And, for *your* convenience, *we* also tell *you* here.

**1.   We Insure You**

*You* are an *insured person* under every coverage in *your* Home Policy. Remember, this includes *your* spouse if he or she lives with *you*.

**2.   We Insure Your Family Members**

*Your family members* are also *insured persons* under every coverage in this policy. This includes all the following people, but only if they are residents of *your* household:

* *your* children;

* *your* other relatives; and

* other people under 21 years of age, such as wards, who are in the care of *you* or a *family member*.

Case 1:13-cv-24568-JEM   Document 18   Entered on FLSD Docket 03/13/2014   Page 26 of 61

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 17 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 17 of 51

**3. We Insure Some Other People and Organizations.**

There are some situations when other people may be insured by this policy. To meet these needs, *your* Home Policy expands the definition of *insured person* in special situations.

Under **Personal Liability** and **Medical Expenses** coverage, *insured person* also includes:

- for accidents involving a motor vehicle covered by *your* Home Policy, any person using that vehicle with *your* permission at an *insured place* or while working for *you* or a *family member*; and

- for accidents involving an animal or watercraft owned by *you* or a *family member*, any person or organization with legal responsibility for that animal or watercraft. But this doesn't include a person or organization using or having custody of that animal or watercraft without permission, or in the course of a *business*, trade or job.

## PART I: YOUR PROPERTY COVERAGE

This part of *your* Home Policy covers *you* and *your* family against financial loss if the things *you* own are damaged or lost. We tell *you* about this coverage in "Residences and Personal Property". The specific items we cover in each are described in "What We Cover".

What kind of losses will we pay for? *We* cover *your* property against physical damage or loss, except the ones specifically described in "Losses We Won't Pay For". And, to help *you* and *your* family meet the many incidental costs connected with a property loss, *we'll* pay many other kinds of expenses, too. They're described in "Extra Benefits".

Who we insure. In all parts of "Your Property Coverage", the words *insured person* include *you* and other *family members*.

## RESIDENCES AND PERSONAL PROPERTY

This section tells *you* how *we* cover the places where *your* live and the things *you* and *your* family own.

## WHAT WE COVER

### A. YOUR RESIDENCES

*We* cover any one-family or two-family house, condominium, cooperative unit, apartment, or any other type of *residence you* own or rent to live in, named on the Declarations Page, if it is used mainly as an *insured person's residence. Residence* includes outdoor possessions.

- **Outdoor Possessions**

Nearly everything on the ground around *your* one-family or two-family house is also covered: *your* garage; *your* swimming pool; *your* outdoor buildings; *your* trees, shrubs and lawn; *your* lawnmowers and maintenance equipment; and construction materials *you* plan to use for *your* residence. Your Home Policy covers all these outdoor possessions. But *your* coverage for them is subject to these special rules:

**Other Structures.** *We* cover most outdoor structures on the grounds, whether or not they are attached to the house. But *we* do not cover unattached structures that an *insured person*:

- uses primarily for a *business*, trade or job. However, *we* cover unattached structures containing *business* property owned by an *insured person* as long as the *business* is not conducted there; or

- rents or intends to rent to a person who does not live in a *residence* on those grounds, unless the structure will be used as a garage.

A structure is unattached if it is separated from the *residence* by a clear space, even if it is connected by a fence, utility line or something similar.

**Landscaping.** *We* cover losses to *your* trees, shrubs, lawn and other plants on the grounds. *We'll* pay for these losses only if they're caused by:

- fire, lightning or explosion;

- aircraft;

- riot or civil commotion;

- a vehicle not owned or operated by someone who lives in that *residence*; or

- theft, attempted theft, vandalism or malicious mischief.

*We'll* pay up to 5% of the dwelling amount shown on the Declarations Page per *occurrence*, but not more than $2,500 for any one plant, tree or shrub. This coverage is additional insurance.

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 18 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 18 of 51

*Land Restoration. We* will pay up to the greater of $10,000 or 10% of the covered property loss for costs required to replace, rebuild, stabilize or restore the land necessary to support *your residence* sustaining a loss covered by this policy. This special limit doesn't raise *our total coverage limit* for that *residence.*

## B. YOUR PERSONAL PROPERTY

*We* cover an *insured person's personal property.* This is any physical object *you* own except real estate and motor vehicles. (But motor vehicles used to maintain a *residence* are considered *personal property* unless they are licensed for road use.) At *your* request, *we* will also cover:

- other people's *personal property* in a *residence* named on the Declarations Page, except in a part of that *residence* occupied by someone who isn't an *insured person;* and
- *personal property* owned by a guest or domestic employee while it is in any *residence* occupied by a *family member.*

*Territory. We* cover *personal property* anywhere in the world.

- **Condominiums, Cooperatives, and Apartments**

If the *residence* named on the Declarations Page is a condominium, cooperative unit, apartment, or any other type of *residence you* rent to live in, we don't cover losses to the *residence* itself because *you* don't own it the way *you* own *your* house. But *your* Home Policy provides for the special needs of unit owners and renters.

*We'll* pay for loss to:

- additions;
- alterations;
- improvements;
- fixtures; and
- other permanent installations.

But it must be property that an *insured person* paid for or acquired at *your* own expense along with the *residence.* And it must be a kind of loss covered by this policy. If the *residence* is a condominium or cooperative unit, the property must be the *insured person's* insurance responsibility under the governing rules of the Condominium or Cooperative Association.

- **Personal Property We Don't Cover**

There are some kinds of *personal property your* Home Policy doesn't cover.

**(1) Rental Property.** *We* don't cover *personal property* an *insured person* rents out or intends to rent out away from a *residence* named on the Declarations Page. Nor do *we* cover *personal property* in a room or apartment an *insured person* regularly rents out or intends to rent out, except to the extent provided in M. Landlord's Furnishings under Extra Benefits.

**(2) Animals.** *We* don't cover birds, fish or other animals.

**(3) Property covered by another policy.** *We* don't cover anything described and specifically covered by another insurance policy.

**(4) Tenant's property.** *We* don't cover anything owned by a roomer, boarder or tenant not related to an *insured person.*

**(5) Aircraft and Aircraft Parts.** *We* don't cover aircraft. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo.

- **Special Limits for Some Kinds of Property**

For certain kinds of *personal property your* Home Policy doesn't provide full coverage. In this section *we* tell *you* about some special limits. These limits are part of *your* overall *coverage limits,* and don't increase *your* total *coverage* for any *residence.*

The Special Limit for each category of property is the limit shown below for each category or, for an additional premium, the limit shown on the Declarations Page for each category.

**(1) Money and Precious Metals.** *We* won't pay more than $2,000 per *occurrence* for losses to money, bullion, bank notes, scrip, stored value cards, smart cards, gold, silver or platinum.

**(2) Negotiable papers.** *We* won't pay more than $5,000 per *occurrence* for losses to securities, accounts, deeds, evidences of debt, letters of credit, notes (other than bank notes), manuscripts, passports, or tickets.

**(3) Trailers.** *We* won't pay more than $5,000 per *occurrence* for losses to trailers.

**(4) Watercraft.** *We* won't pay more than $10,000 per *occurrence* for losses to watercraft, including their furnishings, equipment and outboard motors.

Case 1:13-cv-24568-JEM   Document 18   Entered on FLSD Docket 03/13/2014   Page 28 of 61

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 19 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 19 of 51

(5) **Jewelry.** *We* won't pay more than $10,000 per *occurrence* (but not exceeding $5,000 per article) for jewelry that is stolen, misplaced or lost. This includes watches, and precious or semi-precious stones, whether set or unset.

(6) **Furs.** *We* won't pay more than $10,000 per *occurrence* (but not exceeding $5,000 per article) for furs that are stolen, misplaced or lost.

(7) **Metalware.** *We* won't pay more than $10,000 per *occurrence* for metalware that is stolen, misplaced or lost. This includes plated ware, silverware, tableware, trays, trophies and other household articles (other than jewelry) consisting principally of sterling silver, gold or pewter.

(8) **Stamps and Coins.** *We* won't pay more than $5,000 per *occurrence* for losses to collectible stamps, coins or medals. However, when this property is located in a bank vault or a bank safe deposit box, *your* full coverage *limit* for personal *property* will apply to a covered loss.

(9) **Firearms.** *We* won't pay more than $6,000 per *occurrence* for firearms and related equipment that is stolen, misplaced or lost.

(10) **Grave markers.** *We* won't pay more than $10,000 per *occurrence* to replace, stabilize or restore grave markers or mausoleums.

(11) **Business Property.** *We* won't pay more than $10,000 per *occurrence* for losses to property (not otherwise insured) an *insured person* uses primarily for a *business*, trade or job.

(12) **Golf carts.** *We* won't pay more than $5,000 per *occurrence* for losses to golf carts. Coverage only applies if the golf cart is designed for recreational use off public roads and not subject to motor vehicle registration.

• **Special Limit for Property Kept at Your Other Residences**

For losses to property generally kept at an *insured person's residence* that isn't named on the Declarations Page, *we* won't pay more than the highest of the following per *occurrence*:

• $10,000;
• 5% of the highest *coverage limit* for a *residence* under this policy that is a one or two-family house; or
• 10% of the highest *coverage limit* for a *residence* under this policy that is a condominium, cooperative unit, apartment or any other type of residence *you* rent to live in.

The "Special Limit for Property Kept at Your Other Residences" does not apply to additions, alterations, improvements, fixtures and other perma-

nent installations referred to in "Personal Property: Condominiums, Cooperatives and Apartments".

**New homes.** If an *insured person* acquires a new *residence*, this special limit doesn't apply to that *residence* for 30 days after he or she begins moving there.

## LOSSES WE'LL PAY FOR

So far, *you've* seen that *we* cover *your residences* and a wide range of *personal property*.

What are these things covered against? Simple.

Property described in "What We Cover" is covered against risks of physical loss, except under certain circumstances described in the next section.

## LOSSES WE WON'T PAY FOR

In this section of *your* Home Policy, *we* describe some circumstances when *we* won't pay for a property loss. *We* call these circumstances *exclusions*.

These *exclusions* apply to everything covered under "Part I: Your Property Coverage", except as noted otherwise. As *we* describe each *exclusion*, *we'll* tell *you* which kind(s) of property it doesn't apply to.

*We'll* also tell *you* whether an *exclusion* applies to *direct loss*, to *ensuing loss*, or to both. A *direct loss* is a property loss caused directly by a particular set of circumstances. An *ensuing loss* is a property loss caused indirectly by those circumstances. The *exclusions* apply regardless of any other cause or event contributing concurrently or in any sequence to the loss.

(1) **Earth Movement.** *We* won't pay for *direct loss* caused by earthquake including land shock waves or tremors before, during or after a volcanic eruption; or by landslide; mudflow; earth sinking, rising or shifting; unless *direct loss* by:

• fire;
• explosion; or
• breakage of glass or safety glazing material which is part of a building, storm door or storm window;

ensues and then *we* will pay only for the *ensuing loss*.

This *exclusion* applies only to *residences*.

(2) **Water Damage.** *We* won't pay for *direct loss* caused by any kind of surface or underground water. This includes floods, waves, spray (whether or not it is driven by wind), seepage, leakage and water pressure. *We* won't pay for *ensuing loss* either, unless the direct cause is fire, theft or explosion. This *exclusion* doesn't apply to *personal property* that is not at any location an *insured person* owns, rents, occupies or controls.

(3) **Power Interruption.** *We* won't pay for *direct loss* caused by an interruption of power or other utility service if the interruption takes place away from the *residence*. *We* will pay for any *ensuing loss* that is not excluded.

(4) **Theft from a residence under construction or renovation.** *We* won't pay for *direct loss* caused by theft from a *residence* under construction or renovation, including the theft of construction materials and supplies, until the *residence* is completed and occupied. This exclusion does not apply if an *insured person* is living in the *residence* while it is under construction or renovation.

(5) **Deterioration.** *We* won't pay for *direct loss* caused by deterioration or inherent vice. This includes wear and tear, marring, scratching, latent defect, rust, mold, fungi, wet or dry rot, and electrical or mechanical breakdown.

(6) **Contamination.** *We* won't pay for *direct* or *ensuing loss* caused by the release, discharge, dispersal or application of contaminants or pollutants from any source, or by rust, mold, fungi, or wet or dry rot.

(7) **Air Pollution.** *We* won't pay for *direct* or *ensuing loss* caused by air pollution or smog. This includes smoke from industrial operations and agricultural smudging.

(8) **Building movement.** *We* won't pay for *direct loss* caused by certain kinds of building movement. These are: settling, cracking, shrinking, bulging, or expansion, but only if they occur to: pavement, patios, foundations, walls, floors, roofs, or ceilings.

(9) **Animals.** *We* won't pay for *direct loss* caused by animals owned or kept by an *insured person*. *We* also won't pay for *direct loss* caused by insects, vermin, birds or rodents.

(10) **Government action.** *We* won't pay for *direct* or *ensuing loss* caused by the enforcement of any ordinance or law regulating construction, repair or demolition, unless specifically provided under this policy.

(11) **Neglect.** *We* won't pay for *direct* or *ensuing loss* caused by an *insured person* not taking all reasonable steps to protect property when an initial loss occurred.

(12) **War.** *We* won't pay for *direct* or *ensuing loss* caused by any kind of military or warlike action. War includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

(13) **Nuclear hazard.** *We* won't pay for *direct* or *ensuing loss* caused by any kind of *nuclear hazard*.

- *Nuclear Hazard* means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.
- Loss caused by *nuclear hazard* will not be considered loss caused by fire, explosion, or smoke, whether these causes of loss are specifically named in or otherwise included within the losses we'll pay for in "Part I: Your Property Coverage: Residences and Personal Property".
- This policy does not apply under "Part I: Your Property Coverage: Residences and Personal Property"; to loss caused directly or indirectly by *nuclear hazard*, except that *direct loss* by fire resulting from *nuclear hazard* is covered.

(14) **Freezing, ice or water pressure damage to certain structures.** *We* won't pay for *direct loss* to certain structures caused by ice, thawing ice, freezing water, or the weight or pressure of ice or water. These structures are: fences, retaining walls, pavements, patios, swimming pools, foundations, bulkheads, docks, piers, or wharfs.

(15) **Vandalism to a vacant residence.** *We* won't pay for *direct loss* to a *residence* if it has been vacant for more than 60 consecutive days immediately before the loss if the loss is caused by: vandalism, malicious mischief, or the breakage of glass or safety glazing material. A building under construction or renovation isn't considered vacant. This *exclusion* does not apply to *personal property*.

(16) **Dampness.** *We* won't pay for *direct* or *ensuing loss* caused by humidity or damp air. This does not include rain, snow, sleet or hail. This *exclusion* applies only to *personal property*.

Case 1:13-cv-24568-JEM   Document 18   Entered on FLSD Docket 03/13/2014   Page 30 of 61

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 21 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 21 of 51

**(17)   Temperature.** *We* won't pay for *direct or ensuing loss* caused by extreme heat or cold. This doesn't include rain, snow, sleet, or hail. This *exclusion* applies only to *personal property.*

**(18)   Restoration.** *We* won't pay for *direct or ensuing loss* caused by refinishing, renovating, or repairing. This *exclusion* applies only to *personal property* other than jewelry, watches, and furs.

**(19)   Watercraft accidents.** *We* won't pay for *direct or ensuing loss* to a watercraft or its trailer, equipment, furnishings or outboard motor caused by; sinking, swamping, being stranded, or colliding with anything except a land vehicle.

**(20)   Civil authority.** *We* won't pay for *direct or ensuing loss* caused by the destruction, confiscation or seizure of property by a government or public authority. This *exclusion* does not apply if these actions are taken at the time of a fire to prevent its spread.

**(21)   Breakage of fragile articles.** *We* won't pay for *direct or ensuing loss* to fragile *personal property* caused by breakage. Fragile *personal property* includes: eyeglasses, glassware, statues, marble, bric-a-brac, porcelains, and other fragile articles. It does not include: jewelry, watches, bronzes, cameras, and photographic lenses.

But *we'll* pay for the breakage of fragile articles caused directly or indirectly by:

* fire, lightning, windstorm or hail;
* smoke (except from industrial operations or agricultural smudging);
* theft, attempted theft, vandalism or malicious mischief;
* earthquake, explosion, or the collapse of a building or part of a building;
* motor vehicles, including aircraft;
* rain, snow, sleet or hail;
* riot or civil commotion; or
* sudden and accidental loss of steam or water from a heater, air conditioner or hot water heater.

**(22)   Weather Conditions.** *We* won't pay *direct loss* caused by weather conditions, including rain, snow, sleet, hail or wind. However, this *exclusion* only applies if weather conditions contribute in any way with an *exclusion* in (1) to (21) above, other than *exclusion* (5), to produce the loss.

**(23)   Acts or Decisions.** *We* won't pay *direct loss* caused by conduct, act, failure to act, or decision of any person, group, organization, or governmental body whether intentional, wrongful,

negligent or without fault. *We* won't pay for *ensuing loss*, either, unless the direct cause is a risk not excluded in (1) to (22) above.

**(24)   Faulty, Inadequate, or Defective.** *We* won't pay for *direct loss* caused by defect, weakness, inadequacy, fault or unsoundness in:

* planning, zoning, development, surveying, siting;
* design, specification, workmanship, repair, construction, renovation, remodeling, grading, compaction;
* materials used in repair, construction, renovation, remodeling or maintenance; or
* maintenance

of any property such as land, structures or improvements of any kind, whether on or off a *residence* named on the Declarations Page.

*We* won't pay for *ensuing loss* either, unless the direct cause is a risk not excluded in (1) to (23) above.

**(25)   Collapse.** *We* won't pay for *direct loss* involving the collapse of all or part of a building unless the collapse is sudden and unexpected and is directly caused by one of the following:

* hidden decay or vermin damage;
* weight of persons, animals, equipment, or contents;
* weight of rain or snow which collects on a building;
* defective methods or materials used in construction, repair, remodeling, or renovation, but only if the collapse happens during construction, repair, remodeling, or renovation; or
* a risk not excluded in (1) to (24) above.

**(26)   Intentional loss.** *We* won't pay for *direct or ensuing loss* caused intentionally by *you* or a *family member*, or by a person directed by *you* or a *family member* to cause a loss where the *insured person* intending to cause the loss will benefit from this insurance.

* **Special Rules for Home Appliances**

*You* may have a loss caused by certain home appliances breaking down, or not working right. The following rules apply to property loss caused by any of these appliances: heaters, air conditioners, fire protective sprinkler systems, other household appliances, *plumbing fixtures*, and the connecting pipes while located within the walls of the *residence*. *Plumbing fixture* means sinks, bathtubs, showers, toilets and bidets.

Case 1:13-cv-24568-JEM Document 8-2 Entered on FLSD Docket 01/27/2014 Page 22 of 51
Case 1:13-cv-24568-JEM Document 5-2 Entered on FLSD Docket 01/06/2014 Page 22 of 51

**(1) Leakage and seepage.** We won't pay for direct or ensuing loss to a residence or personal property caused by water or steam escaping from one of these appliances or fixtures over a period of time. It doesn't matter whether it escaped continuously or in repeated occurrences.

**(2) Sudden water loss.** We will pay for direct and ensuing loss to a residence or personal property caused by water or steam escaping from one of these appliances suddenly and, accidentally, even if the escape was due to deterioration, contamination, air pollution, building movement or animals. We'll also pay to tear out and replace any part of a building necessary to repair the appliance. But we won't pay for loss to the appliance itself.

**(3) Internal freezing.** We'll pay for direct and ensuing loss to a residence or personal property caused by freezing inside the appliance, unless:

- the residence was vacant, unoccupied, or under construction or renovation; and
- you didn't take reasonable steps to prevent it from freezing, either by heating your residence or by shutting off the water supply and draining the system or appliance. If your residence has a fire protective sprinkler system, you must leave the water supply on and maintain heat to prevent freezing.

## EXTRA BENEFITS

In addition to covering your residence and personal property, "Your Property Coverage" includes many extra benefits. We'll pay certain costs that may occur in connection with a loss, such as extra living expenses after your house burns down. We'll pay for some losses that may not involve tangible property, such as information stored in a home computer.

This section describes your extra benefits in detail. Except where noted, these benefits are additional coverages over and above your coverage limits.

### A. LOSS OF USE OF YOUR RESIDENCE

If a residence named on the Declarations Page can't be lived in because of a loss covered by this policy, we'll pay certain expenses. These expenses are described below. This coverage does not apply to expenses caused by a cancelled lease or contract.

This extra benefit is part of "Your Property Coverage". Our payments will be applied against your coverage limit for that residence. There is no deductible. And we'll continue to pay these ex-

penses for as long as you're eligible for them, even if your Home Policy expires during that time.

- **Additional Living Expenses**

You may not be able to live in your residence because of a loss covered by this policy. If so, we'll pay for any increase in your normal living expenses that is necessary to maintain your normal standard of living. We'll pay these expenses for the shortest time needed to repair or replace the residence, or to move to a new one.

- **Loss Of Rent**

You may not be able to rent out part of your residence because of a loss covered by this policy. If so, we'll pay the fair value of the rent you lose. We'll pay it for the shortest time needed to repair or replace the residence. But it must be a part of your residence that you normally rent out. And we'll subtract any expenses you don't have to pay while it's unoccupied.

- **Evacuation Costs**

You may not be able to live in your residence because a civil authority forbids you to use it because of a loss to a neighbor's property. If so, we'll pay your additional living expenses. We'll also pay for loss of rent if part of your residence is normally rented out. We'll pay these expenses for as long as you're told not to use the residence, up to a maximum of 30 days. But the loss to your neighbor's property must be a kind of loss covered by this policy.

### B. CREDIT CARD, FUND TRANSFER CARD, FORGERY, COUNTERFEIT MONEY AND HOME BANKING

We cover certain kinds of financial swindling, described below. But we won't pay for any loss resulting from an insured person's dishonesty, or from an insured person's business, trade or job. This extra benefit has a coverage limit of $10,000. There is no deductible.

We reserve the right to investigate and settle any lawsuit resulting from these losses. If we decide to defend against the suit, we will choose and hire a lawyer.

Case 1:13-cv-24568-JEM   Document 18   Entered on FLSD Docket 03/13/2014   Page 32 of 61

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 23 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 23 of 51

**(1)  Unauthorized Use of a Credit Card or Bank Card.** This benefit applies to an *insured person's* losses or legal obligations resulting from the theft or unauthorized use of a credit card or bank card issued in any *insured person's* name. This includes the theft of a credit card number on the Internet. All terms and conditions of the card must be complied with.

But we do not cover any use by a *family member* or someone who was given the card, even if the specific use was unauthorized.

**(2)  Forgery.** This benefit applies to an *insured person's* losses caused by a check, or another kind of negotiable instrument, that was forged or altered.

**(3)  Counterfeit Money.** This benefit applies to an *insured person's* losses caused by accepting counterfeit United States or Canadian money. But the money must have been accepted in good faith.

**(4)  Home Banking.** This benefit applies to an *insured person's* losses or legal obligations resulting from the unauthorized use of computer equipment to conduct personal checking transactions with a bank.

But *we* do not cover any use by a *family member* or someone who is given access to the computer ordinarily used by an *insured person* to conduct such transactions, even if the specific use was unauthorized.

**C.  MORTGAGE RENEGOTIATION COSTS.**

*We* cover certain extra costs if a bank or lending institution requires *you* or a *family member* to renegotiate a mortgage at a higher rate. This coverage applies only to a *residence* named on the Declarations Page that is totally destroyed by a loss this policy covers. A *residence* is considered totally destroyed when we've paid 90% of the dwelling value shown on the Declarations Page for that *residence*. The costs *we* cover are:

**(1)  Monthly payments.** *We'll* pay the difference between the old and the new monthly payments. *We'll* pay them every month, until the final payment date or until the property is sold. But *we* won't pay for points or service charges levied by the bank or institution, or for any kind of taxes. This is additional coverage, with a *coverage limit* of $50,000. There is no *deductible*.

**(2)  Legal costs.** *We'll* also pay legal expenses related to the mortgage. *We'll* pay them whether *you* renegotiate the mortgage or maintain the existing one. Legal costs include lawyer's fees and related expenses like a title search or deed filing.

They don't include fines, judgments, points, service charges, or legal services by any lawyer except the *insured person's*. This is additional coverage, with a *coverage limit* of $2,000. There is no *deductible*.

**D.  PERSONAL COMPUTER RECORDS.**

*We* cover the cost of re-creating information *you* store in a computer located at a *residence* covered by this policy. But the information and computer must be primarily for personal use, and the information must be lost because of a loss covered by this policy, including the loss of personal data as a result of a computer virus. This extra benefit has a *coverage limit* of $5,000.

**E.  LOSS-RELATED EXPENSES.**

*We'll* pay these extra expenses that may occur after a loss.

**(1)  Debris Removal.** *We'll* pay reasonable costs for removing debris of covered property resulting from a loss covered by this policy. *We* will also pay reasonable costs of removing a fallen tree that:

- has caused a loss to a structure covered by this policy;

- blocks a driveway; or

- blocks a ramp or other access way designed to assist a handicapped person to enter or leave the residence.

Tree removal does not include the uprooting and removal of tree roots. Tree removal is included in the Debris Removal *coverage limit*.

**Tree removal not included in Debris Removal.** *We* will pay up to $1,000 for the removal of fallen trees caused by wind, hail, sleet, or the weight of ice or snow when the tree does not damage a structure or block a driveway or handicap-access way. Tree removal does not include the uprooting and removal of tree roots.

**(2)  Precautionary Repairs.** After a loss covered by this policy, *we'll* pay reasonable costs for temporary repairs only to prevent additional loss. But the only reason for the repair must be to prevent further damage. This extra benefit is part of "Your Property Coverage", and will be applied against *your coverage limit* for that *residence*.

Case 1:13-cv-24568-JEM   Document 18   Entered on FLSD Docket 03/13/2014   Page 33 of 61

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 24 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 24 of 51

**(3) Fire Department Service Charges.** If *you* have an agreement with the fire department to pay when it answers *your* call, *we'll* pay the charges up to $1,000. But the fire department must have been called to protect the property covered by this policy from a loss covered by this policy. *We* won't pay if the property is inside the city, municipal district or fire district normally protected by that fire department. This extra benefit is additional coverage, with no *deductible*.

**(4) Property Removed.** *We'll* pay for any loss to property removed from a *residence* because it is in danger of a loss covered by this policy. But it must be properly covered by this policy. This extra benefit applies for 30 days after the property is removed. It is part of "Your Property Coverage", and will be applied against *your coverage limit* for this *residence* the property is removed from.

### F. CONSTRUCTION STANDARDS

After a covered loss, we will pay the cost of conforming to any law or ordinance that regulates the repair, rebuilding or demolition of *your residence* made necessary by the covered loss. If *you* do not repair *your residence* or rebuild it at the same location, this coverage does not apply.

### G. ARSON AWARD

*We* will pay $1,000 for information leading to an arson conviction in connection with a fire loss covered under this policy. $1,000 is the most we will pay regardless of the number of persons providing information.

### H. LOCK REPLACEMENT

If the keys to *your residence* are lost or stolen, *we'll* pay for the cost of replacing the locks to *your residence* up to a total of $1,500. *You* must notify *us* in writing within 72 *hours* of *your* discovering the missing keys. No *deductible* applies.

### I. FOOD SPOILAGE

*We'll* pay up to the *coverage limit* for a *residence* for spoilage of food resulting from the loss of power to, or mechanical failure of a refrigerator or deep freeze unit located at *your residence*.

The most *we* will pay for a covered loss to wine is $5,000.

This coverage does not apply if:

* the plug from an electrical outlet is removed;
* an electrical switch is turned off; or
* *you* did not use all reasonable means to protect the food from spoiling.

There is a $250 *deductible* for this coverage.

### J. LOSS ASSESSMENT

*We'll* pay up to $50,000 per *occurrence* for *your* share of an assessment charged during the *policy period* against all members in the Condominium, Cooperative, or Homeowners Association. But it must be an assessment for:

* a loss to property owned by the Association; or
* liability resulting from the *deductible* in an insurance policy.

For *us* to pay, it must be a kind of loss or liability covered by this policy, other than earthquake.

*We* will pay no more than $5,000 of a loss assessment that results from a *deductible* or self-insured retention in the insurance purchased by the corporation or association of property owners.

There is no *deductible* for this coverage.

### K. IDENTITY FRAUD EXPENSES

*We* will pay for an *insured person's identity fraud expenses* resulting from *identity fraud*. The most *we* will pay for this is $25,000 for each *identity fraud occurrence*, subject to a $500 *deductible* for each *identity fraud occurrence*. This coverage only applies to *identity fraud occurrences* that commence during the *policy period*.

* **Definitions**

*Identity fraud* means the act of knowingly transferring or using, without lawful authority, an *insured person's* means of identity in violation of federal law or any applicable state or local law.

*Identity fraud expenses* means:

* costs for notarizing affidavits or similar documents for law enforcement agencies, financial institutions, credit grantors, credit agencies, credit bureaus or similar organizations;
* costs for certified mail to law enforcement agencies, financial institutions, credit grantors, credit agencies, credit bureaus or similar organizations;
* costs for telephone calls to merchants, businesses, law enforcement agencies, financial institutions, credit grantors, credit agencies, credit bureaus or similar organizations;
* loan application fees for re-applying for loan(s) when the original loan application was rejected because the lender obtained incorrect credit information;

- up to $250 per day, not to exceed a total of $10,000, for actual earnings lost as a result of missing work to complete fraud affidavits or meet with legal counsel, merchants, businesses, law enforcement agencies, financial institutions, credit grantors, credit agencies, credit bureaus or similar organizations; or

- reasonable attorney fees incurred for the following, but only if you give *us* prior notice:

  - defense of an *insured person* against any lawsuit(s) by merchants, businesses or their collection agencies;

  - removal of any criminal or civil judgments wrongly entered against an *insured person*; or

  - challenge of the information in an *insured person's* consumer credit report or similar records.

*Identity fraud occurrence* means any act or series of acts of *identity fraud* committed by one person or a related group of people.

*Identity fraud expenses we do not cover:*

*We* will not pay for *identity fraud expenses* due to any fraudulent, dishonest or criminal act by:

- an *insured person;*

- any person acting in concert with an *insured person;* or

- any authorized representative of an *insured person;*

whether acting alone or in collusion with others.

This coverage does *not* apply to losses covered under *your* Extra Benefit for Credit Card, Fund Transfer Card, Forgery, Counterfeit Money and Home Banking.

**L. KIDNAP AND RANSOM EXPENSES**

*We* will pay for an *insured person's* *kidnap and ransom expenses* that are reasonably and necessarily incurred by an *insured person* because of a *kidnap and ransom occurrence* of an *insured person.* The most *we* will pay for this is $25,000 for each *kidnap and ransom occurrence,* subject to a $500 *deductible* for each *kidnap and ransom occurrence.* This coverage only applies to *kidnap and ransom occurrences* that commence during the *policy period.*

- **Definitions**

*Kidnap and ransom expenses* means:

- costs for notarizing affidavits or similar documents for law enforcement agencies, financial institutions or similar organizations;

- costs for certified mail to law enforcement agencies, financial institutions or similar organizations;

- costs for telephone calls to law enforcement agencies, financial institutions or similar organizations;

- lost income of an *insured person* resulting from time taken off work to complete affidavits, meet with or talk to law enforcement agencies and/or legal counsel, up to a maximum of $250 per day, not to exceed a total of $10,000;

- reasonable attorney fees incurred by an *insured person* as a result of a kidnap and ransom, but only with prior notice and approval given by *us;*

- costs of travel and accommodations incurred by an *insured person* while attempting to negotiate a kidnapping; and

- fees and expenses of an independent forensic analyst, private investigator or negotiator hired by an *insured person,* but only with prior notice and approval given by *us.*

*Kidnap and ransom occurrence* means any act or series of acts of kidnapping committed by one person or a related group of people.

**Kidnap and ransom expenses we do not cover:**

*We* will not pay for *kidnap and ransom expenses* incurred due to a kidnapping of an *insured person* by an *insured person,* or by any authorized representative of an *insured person,* whether acting alone or in collusion with others.

**M. LANDLORD'S FURNISHINGS**

*We* will pay up to $10,000 for *your* appliances, carpeting and other household furnishings, in an apartment at the location of *your residence,* which is regularly rented to others by an *insured person.* The loss must be covered by this policy, other than theft.

**PART II: YOUR LIABILITY COVERAGE**

This part of *your* Home Policy covers *you* and *your* family against financial loss if any of *you* accidentally hurts someone or damages their property. And *we* also cover many *medical* expenses

after an accident. All these coverages are described in "What We Cover".

What kinds of damages will *we* pay? For a claim or suit covered by this policy, we'll pay damages for which *you* are legally liable for;

- *bodily injury*, which means physical harm, sickness, mental anguish or death, including any care required or services lost because of injury;
- *personal injury*, which means false arrest, invasion of privacy, wrongful eviction or entry, libel, slander or defamation of character; and
- *property damage*, which means physical damage or destruction to property, or the loss of its use.

This coverage applies to any *occurrence* except the ones specifically described in "Damages We Won't Pay". To help *you* and *your* family meet the many incidental costs connected with an *occurrence*, *we'll* pay many other kinds of expenses, too. They're described in "Extra Benefits".

## LIABILITY AND MEDICAL EXPENSES

This section tells *you* about the different kinds of liability and *medical expenses your* Home Policy covers.

## WHAT WE COVER

### A. PERSONAL LIABILITY

*We'll* pay damages an *insured person* is legally obligated to pay because of an *occurrence* that results in *bodily injury*, *personal injury* or *property damage* during the *policy period*.

**Who we insure.**

Under this coverage, *insured person* includes *you*, other *family members*, and the following other people and organizations:

- for *occurrences* involving a motor vehicle covered by *your* Home Policy, any person using that vehicle with *your* permission at an *insured place* or while working for *you* or a *family member*; and
- for *occurrences* involving an animal or watercraft owned by *you* or a *family member*, any person or organization with legal responsibility for that animal or watercraft. But this doesn't include a person or organization using or having custody of that animal or watercraft without permission, or in the course of a *business*, trade or job.

**Territory.** This coverage applies to *occurrences* happening anywhere in the world.

### B. MEDICAL EXPENSES

In addition to Personal Liability coverage, *we'll* pay reasonable *medical expenses* for certain people injured in an accident, including:

- fees for doctors, surgeons, dentists and nurses;
- hospital and ambulance costs;
- charges for X-rays and artificial limbs or organs; and
- funeral expenses.

But *we'll* pay only those reasonable expenses incurred within three years of the date of the accident. By paying these expenses, *we* don't admit any legal liability.

**Who we insure.**

For *bodily injury* from an *occurrence*, *we'll* pay reasonable *medical expenses* for anyone except:

- *you* or a *family member*; or
- a person who regularly lives in *your* household, other than a *domestic employee*.

But *we'll* pay *medical expenses* at *your* request only if the *occurrence* happened at an *insured place* or was caused by:

- an *insured person*;
- a *domestic employee*, in the course of working for an *insured person*;
- an animal owned by or in the care of an *insured person*; or
- a condition at an *insured place* or on the ways immediately adjoining an *insured place*.

Under this coverage, *insured person* has the same meaning as under *your* Personal Liability coverage.

**Territory.** This coverage applies to *occurrences* happening anywhere in the world.

**Insured places.** An *insured place* is any of these locations:

- *residences* and outdoor possessions covered by the property coverage in *your* Home Policy;
- new *residences you* acquire during the *policy period*;
- places used in connection with a covered *residence* or outdoor possessions;
- temporary *residences* of *you* or a *family member*;
- vacant land (other than farmland) owned or rented by *you* or a *family member*;
- land where *you* or a *family member* is building a one-family or two-family house to live in;
- cemetery plots and burial vaults owned by *you* or a *family member*;

Case 1:13-cv-24568-JEM   Document 18   Entered on FLSD Docket 03/13/2014   Page 36 of 61

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 27 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 27 of 51

- places occasionally rented by *you* or a *family member* for any purpose except a *business*, trade or job; and

- for an additional premium, a premises described on the Declarations Page as an additional residence rented to others or as an additional *residence* owner occupied.

## DAMAGES WE'LL PAY

So far, *you've* seen that "Your Liability Coverage" pays for certain damages and *medical expenses* stemming from an *occurrence*.

## DAMAGES WE WON'T PAY

In this section of *your* Home Policy, we describe certain *exclusions*. *We* won't pay for *bodily injury*, *personal injury*, *property damage*, or *medical expenses* to which an *exclusion* applies.

### A. CLAIMS FOR PERSONAL INJURY

*We* won't pay damages for any *personal injury* that one of these *exclusions* applies to:

(1) **Expected or intended injury.** *We* won't pay for any *personal injury* that is expected or intended by *an insured person*. This *exclusion* applies even if the resulting injury:

- is of a different kind, quality or degree than initially expected or intended; or

- is sustained by a different person or entity than initially expected or intended.

However, this *exclusion* does not apply if the injury results from the use of reasonable force by an *insured person* to protect persons or property.

(2) **Employee injuries.** *We* won't pay for *personal injury* to an *insured person's employee*, if it is related in any way to his or her work for the *insured person*.

(3) **Civic activities.** *We* won't pay for any *personal injury* arising out of an *insured person's* activities as an elected or appointed official of a governmental body, whether or not that person is paid for those activities.

(4) **Assumed liability.** *We* won't pay for *personal injury* that an *insured person* assumes liability for under a contract or agreement except for a lease or an incidental contract.

(5) **Business activities.** *We* won't pay damages for any *personal injury* arising out of an *insured person's business*, trade or job.

(6) **Contamination.** *We* won't pay for any *personal injury* arising out of the release, discharge, dispersal, or application of contaminants or pol-

lutants from any source or by rust, mold, fungi, wet or dry rot, or bacteria.

(7) **Lead Hazards.** *We* won't pay for any *personal injury* arising out of lead hazards in or on an *insured place*.

(8) **Molestation and Corporal Punishment.** *We* won't pay for any *personal injury* arising out of corporal punishment, abuse or molestation including but not limited to sexual, physical and mental abuse or molestation, of any person by anyone.

This *exclusion* applies to all *insured persons* irrespective of whether the *insured person* participated in the corporal punishment, abuse or molestation.

(9) **Intra-family liability.** *We* won't pay for *personal injury* to anyone related to an *insured person* by blood, marriage or adoption who is a resident of the same household. This includes a ward or a foster child.

### B. CLAIMS FOR BODILY INJURY OR PROPERTY DAMAGE

For *bodily injury* or *property damage*, we won't pay any claims or *medical expenses* that one of these *exclusions* applies to:

(1) **Expected or intended injury or damage.** *We* won't pay for *bodily injury* or *property damage* or *medical expenses* that are expected or intended by an *insured person*. This *exclusion* applies even if the resulting injury or damage:

- is of a different kind, quality or degree than initially expected or intended; or

- is sustained by a different person, entity or property than initially expected or intended.

However, this *exclusion* does not apply if the injury or damage results from the use of reasonable force by an *insured person* to protect persons or property.

(2) **Professional services.** *We* won't pay for *bodily injury* or *property damage* or *medical expenses* arising out of or by an *insured person's* rendering, or failure to render, professional services.

(3) **Watercraft accidents.** *We* won't pay for *bodily injury* or *property damage* or *medical expenses* arising out of a watercraft an *insured person* owns or rents. The term watercraft includes hovercraft whenever used in this policy.

This *exclusion* does not apply to a watercraft:

- that has an inboard motor of 50 horsepower or less that is:

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 28 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 28 of 51

- rented by an *insured person;* or
- owned by an *insured person* and is not a personal watercraft, airboat, air cushion or similar type of craft. A personal watercraft is any watercraft that is less than 16 feet long which uses an inboard motor powering a water jet pump as its primary source of motive power and which is designed to be operated by a person in a sitting, standing or kneeling position on the vessel rather than inside the vessel. The                                  term personal watercraft includes but is not limited to, jet skis, jet boats and wave runners.

- that has an outboard motor(s) of:
  - 25 total horsepower or less; or
  - more than 25 total horsepower that is rented by an *insured person;* or
  - more than 25 total horsepower that is owned by an *insured person* and was acquired before or during the *policy period* and *you* notified *us* of *your* intention to insure it within 45 days of acquiring it.

- that is a sailboat less than 26 feet long.
- while it is stored.

However, the watercraft listed above will only be covered while they are not:

- practicing for or participating in a race, except for sailboats;
- used to carry persons or cargo for a charge;
- used for any *business* purpose; or
- rented to others.

This exclusion does **not** apply to *bodily injury* or *medical expenses* to a *domestic employee* in the course of his or her job.

**(4) Aircraft accidents.** *We* won't pay for *bodily injury* or *property damage* or *medical expenses* arising out of an aircraft an *insured person* owns or uses, except a remote control model aircraft. This exclusion doesn't apply to a *domestic employee* for an accident in the course of his or her job.

**(5) War.** *We* won't pay for *bodily injury* or *property damage* or *medical expenses* arising out of any kind of military or warlike action. War includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence

of any of these. Discharge of a nuclear weapon shall be deemed a warlike act, even if accidental.

**(6) Assumed liability.** *We* won't pay for *bodily injury* or *property damage* that an *insured person* assumes liability for under a contract or agreement. This *exclusion* doesn't apply to written contracts relating to the ownership, maintenance or use of an *insured place* or to contracts, written before an *occurrence,* where an *insured person* assumes the liability of others.

**(7) Injury required to be covered elsewhere.** *We* won't pay *medical expenses* or damages for *bodily injury* that is covered, or required to be covered, by a worker's compensation, non-occupational disability, or occupational disease law.

**(8) Nuclear accidents.** *We* won't pay for *bodily injury* or *property damage* for which an *insured person:*

- is an *insured person* under a nuclear energy liability policy; or
- would be an *insured person* under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

- Nuclear Energy Liability Insurance Association;
- Mutual Atomic Energy Liability Underwriters; or
- Nuclear Insurance Association of Canada.

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 29 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 29 of 51

We won't pay for *medical expenses* for occurrences from any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

(9) **Accidents to off-duty domestic employees.** We won't pay *medical expenses* for a *domestic employee* for an accident that doesn't occur at an *insured place*, and is not caused by his or her job in any way.

(10) **Accidents to people who live on your property.** We won't pay *medical expenses* for anyone who lives at an *insured place*, except *domestic employees*.

(11) **Accidents to trespassers.** We won't pay *medical expenses* for any person who is at an *insured place* without permission .

(12) **Business related accidents.** We won't pay for *bodily injury* or *property damage* or *medical expenses* arising out of or in the course of conducting a *business*, trade or job, including the rental of land or a building. This *exclusion* does not apply to:

* the occasional or part-time job of a *family member* under 21;
* renting part of *your residence* to one person or as an office, school, studio or private garage;
* occasionally renting *your* entire *residence* as a *residence*; or
* activities that normally occur in the course of non-*business* activities.

(13) **Accidents at your other properties.** We won't pay for *bodily injury* or *property damage* or *medical expenses* arising out of a condition at a place *you* or another *family member* owns or rents that is not an *insured place*. This *exclusion* doesn't apply to a *domestic employee* injured in the course of his or her job.

(14) **Damage to your own property.** We won't pay for *property damage* to property an *insured person* owns or is transporting.

(15) **Damage to property in your care.** We won't pay for *property damage* to property an *insured person* rents, occupies, possesses, uses or has available for regular use, but does not own. This *exclusion* does not apply to property damaged by fire, smoke or explosion.

(16) **Intra-family liability.** *We* won't pay for *bodily injury* to anyone related to an *insured person* by blood, marriage or adoption who is a resident of the same household. This includes a ward or a foster child.

(17) **Communicable Disease.** *We* won't pay for *bodily injury* or *property damage* or *medical expenses* arising out of an *insured person's* transmission of a communicable disease.

(18) **Accidents involving motor vehicles.** *We* won't pay for *bodily injury* or *property damage* or *medical expenses* that occurs while an *insured person* is riding in or driving a motor vehicle. A motor vehicle means any motorized land vehicle, including a trailer while being towed.

This *exclusion* does not apply to:

* an owned motorized golf cart while used for golfing purposes or while traveling to and from a golf course for golfing purposes;
* an owned motorized golf cart while used in a private residential community where an *insured person* lives;
* a non-owned golf cart;
* a motor vehicle designed for recreational use off public roads that is either not owned by an *insured person* or is on an *insured place;* or
* a motor vehicle that is used to service the *residence* of an *insured person*, designed to assist the handicapped, or in dead storage at an *insured place*.

However, the motor vehicles listed above will only be covered while they are not:

* practicing for or participating in a race;
* used to carry persons or property for a charge;
* used for any *business* purpose, except for golf carts; or
* rented to others.

(19) **Molestation and Corporal Punishment.** *We* won't pay for any *bodily injury* or *property damage* or *medical expenses* arising out of corporal punishment, abuse or molestation including but not limited to sexual, physical and mental abuse or molestation, of any person by anyone. This *exclusion* applies to all *insured persons* irrespective of whether the *insured person* participated in the corporal punishment, abuse or molestation.

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 30 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 30 of 51

**(20) Controlled Substance.** *We* won't pay for *bodily injury* or *property damage* or *medical expenses* arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled substance includes but is not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this *exclusion* does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

**(21) Lead Hazards.** *We* won't pay for *bodily injury* or *property damage* or *medical expenses* arising out of lead hazards in or on an *insured place.*

## EXTRA BENEFITS

In addition to covering against claims, suits and *medical expenses,* "Your Liability Coverage" includes many extra benefits. This section describes them in detail. These benefits are additional coverages over and above *your coverage limits.*

### A. Legal Services

*We'll* defend against claims and suits for *bodily injury, personal injury* or *property damage* covered by this policy, at *our* own expense. *Our* obligation ends when *our* limit of liability for this coverage has been exhausted. *We* also reserve the right to investigate and settle a claim whenever *we* wish.

In connection with a claim, suit or occurrence covered by "Your Liability Coverage", *we'll* pay all these costs:

**(1) Legal expenses.** *We'll* pay for investigations, legal fees and court costs while defending against a claim covered by *your* Home Policy.

**(2) Bond premiums.** *We'll* pay premiums on bonds required in a lawsuit *we're* defending. *We* do not have to furnish or apply for any bonds ourselves.

**(3) Interest on a judgment.** If a judgment is entered on a claim covered by this policy, *we'll* pay the interest that accrues until *we* pay the judgment. *We* will pay other interest as required by law on amounts up to the *coverage limit.*

**(4) Loss of earnings.** *We* may ask a person *we're* defending to help *us* investigate or defend against that claim. If *we* do, *we'll* pay up to $250 a day for actual loss of wages or salary (but not loss of other income). *We'll* pay for other reasonable expenses incurred at *our* request, too.

### B. First Aid

*We'll* reimburse an *insured person* for money he or she spends for first aid at the scene of an accident, to anyone who is not an *insured person.*

### C. Voluntary Payments

*We'll* pay for damage an *insured person* causes to someone else's property, even if he or she isn't legally obligated to pay. *We'll* pay, at *your* request, up to $2,000 for each *occurrence.* There is no *deductible* for these payments. But *we* won't pay for:

- damage to property that *you* or anyone who lives with *you* (including tenants) owns or rents;
- damage to property covered by the property coverage of *your* Home Policy;
- damage occurring in connection with a *business,* trade or occupation;
- damage caused by a motor vehicle, aircraft or boat;
- damage occurring at a place an *insured person* owns or rents that isn't an *insured place;* or
- damage caused intentionally, unless the person who caused it was less than 13 years old.

### D. Loss Assessment

*We'll* pay up to $50,000 per *occurrence* for *your* share of an assessment charged during the *policy period* against all members in the Condominium, Cooperative, or Homeowners Association. But it must be an assessment for:

- liability of the Association; or
- liability resulting from the *deductible* in an insurance policy.

For *us* to pay, it must be:

- a liability *occurrence* covered by this policy; or
- an act or series of related acts committed by the organization's officers, directors or trustees while acting in their capacity as such, provided:

  **(1)** the directors, officers or trustees are elected by the members of the organization; and

  **(2)** the directors, officers or trustees serve without pay.

This coverage applies only to loss assessments charged against *you* as owner or tenant of the *residence.*

*We* do not cover loss assessments charged against *you* or a corporation or association of property owners by any governmental body.

## PART III: TERMS AND CONDITIONS

This part of *your* Home Policy tells *you* everything else *you* need to know about *your* insurance. It's divided into four sections:

- "How Much We'll Pay" explains how *we* figure out *our* payments after an *occurrence* or loss.
- "What To Do After An *Occurrence* Or *Loss*" tells *you* all the steps *you* should take to protect *your* rights and ours.
- "Glossary" repeats the definitions of all the defined words and phrases in this policy.
- "General Conditions" explains the other terms and conditions of *your* Home Policy.

### HOW MUCH WE'LL PAY

This section tells *you* how much *we'll* pay for any loss *we* cover. In it, *we* use certain terms with specific meanings. To understand how much *we'll* pay, *you* need to know exactly what the following terms mean:

**Coverage limit.** *Your* coverage limit is the most *we'll* pay for an *occurrence* or loss. Each type of coverage has its own limit, shown on the Declarations Page.

**Deductible.** *Your* deductible is the amount of a loss *you're* responsible for. *We'll* subtract this amount from *our* payment. If the *deductible* is larger than the amount of the loss, *we* won't pay anything. *Deductibles* do not apply to personal liability or to *medical expenses*.

**Occurrence.** An *occurrence* is an accident that causes *bodily injury*, *personal injury*, *property damage*, or loss. It can be a single event or a series of related events. Generally, *our* coverage applies separately to each *occurrence*.

### YOUR PROPERTY COVERAGE

This section explains how much *we'll* pay for a loss to *your residence* and personal belongings. *We'll* pay this money to *you*, unless another person is named on the Declarations Page to receive *our* payment. *We'll* pay the *replacement cost* of the property except under some circumstances described in Your Residences And Personal Property below.

**Replacement cost.** The *replacement cost* is the cost of replacing property with property of a like kind and quality. *We'll* pay today's cost for comparable property, even if the property *you're* replacing was old and had gone down in value.

### YOUR RESIDENCES AND

### PERSONAL PROPERTY

For a loss to *your* property covered by this policy, *we'll* pay the *replacement cost* except as noted below. *We'll* pay up to *your* coverage limit for each *occurrence*, less *your deductible*. However, if the loss is $50,000 or more, *we* will waive the *deductible*.

For a *residence*, *we* will not pay more than the actual cash value unless actual repair or replacement is completed or the cost to repair or replace is less than 5% of the dwelling amount shown on the Declarations Page. However, if the loss is a total loss and *you* choose not to rebuild at the same location, *you* may select the cash settlement option. If *you* select this option, *we* will establish the *replacement cost*. *Our* payment will be either the *replacement cost* or 50% of the Total Location Limit, whichever is less. By accepting the cash settlement option, *you* forfeit the right to make further claim under the *replacement cost* provisions of the policy.

For *personal property*, *we* will not pay more than the actual cash value for articles that:

- are not maintained in good or workable condition;
- show signs of excessive wear; or
- are outdated or obsolete and are stored or not being used.

**Coverage limits.** On the Declarations Page, *you'll* find a Total Location Limit for each of *your residences*. This limit is the total limit for all real and *personal property* losses, including loss of use, in and around that *residence*. Special limits on certain property apply as described in "Your Property Coverage".

**Personal property.** Which *coverage limit* applies to *personal property*? If the property is at a *residence* when the loss occurs, *we'll* apply the Total Location Limit for that *residence*. If the loss occurs away from a *residence*, *we'll* apply the Total Location Limit for the *residence* that property is usually kept at. If the property isn't usually kept at a *residence*, *we'll* apply *your* highest Total Location Limit.

- **Special Features**

To give *you* maximum coverage for *your* home and *personal property*, *your* Home Policy includes some special features:

**Residence replacement protection.** If *you* decide to repair or replace *your residence* and un-

attached structures at the same location (or different location if the land is declared unusable), and they can be safely rebuilt there without our paying more than the greater of $10,000 or 10% of the covered property loss for land restoration, we'll pay the *replacement cost of your residence* and unattached structures even when it's more than *your coverage limit*. However, this applies **only** if *you* had allowed *us* to annually increase *your coverage limit* to keep pace with inflation and construction costs or as a result of a recently completed inspection using an industry recognized appraisal system. *We'll* also pay for loss to any extensions or new construction *you* added during the *policy period*, but **only** if *you* had reported them to *us* before the loss.

**Special Reserve.** What happens if *you* use up most of *your* coverage on *your residence*, and *you* still have *personal property* to replace? Fortunately, *your* Home Policy keeps a special reserve for just this kind of catastrophe. *We* guarantee that 100% of the dwelling amount shown on the Declarations Page will be available to pay for *personal property*, subject to any special limits described in "Your Property Coverage". And *we* also guarantee that 20% of the dwelling amount shown on the Declarations Page will always be available for loss of use of that *residence*.

If *your residence* is a condominium, cooperative unit, apartment, or any other type of *residence you* rent to live in, *we* guarantee that 40% of the contents amount shown on the Declarations Page will always be available for loss of use of that *residence*.

If *your residence* is a one or two-family house that *you* own, this special reserve coverage applies only when the *residence* is a total loss as defined below:

*   A loss is total in fact when every part of the *residence* is actually destroyed, or when some portion of the *residence* remains intact, but the cost of restoring the *residence* to pre-loss condition exceeds the dwelling amount shown on the Declarations Page; or

*   A loss is total in law when a portion of the *residence* remains intact and the *residence* can be restored to pre-loss condition without exceeding the dwelling amount shown on the Declarations Page, but its destruction is required by law.

## YOUR LIABILITY COVERAGE

This section explains how much *we'll* pay for an *occurrence* covered by *your* liability or *medical expenses* coverages.

*   **Personal Liability**

For personal liability covered by *your* Home Policy, *we'll* pay up to *your* liability *coverage limit*. That is the most *we'll* pay for each *occurrence*, no matter how many people were involved.

*   **Medical Expenses**

For *medical expenses* covered by *your* Home Policy, *we'll* pay up to *your* medical expenses *coverage limit*. That is the most *we'll* pay for each *occurrence*, no matter how many people were involved.

## WHEN WE'LL PAY

*We'll* pay all the money we owe *you* within 60 days after *we* receive *your* sworn proof of loss. *Your* claim is considered settled when:

*   *we* reach an agreement with *you* on the amount of the loss and a sworn proof of loss is submitted;

*   a final judgment is entered; or

*   an appraisal award is filed with *us*.

**Residence losses.**

If *you* don't rebuild after a property loss to a *residence*, *we* won't pay more than the actual cash value of the loss. However, this does not apply to a total loss of a *residence*. If *you* haven't decided whether to rebuild, or if *you* don't know how much it will cost, *you* may make an initial claim for the actual cash value. Later, *you* may make an extra claim for the remainder of the *replacement cost*. But *you* must make any extra claims within 180 days of the *occurrence*.

## WHAT TO DO AFTER AN OCCURRENCE OR LOSS

This section explains the steps *you* must take after an *occurrence* or loss, in order for *us* to help *you*. If *you* don't take these steps, *we* may not be able to pay any money.

Case 1:13-cv-24568-JEM   Document 18   Entered on FLSD Docket 03/13/2014   Page 42 of 61

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 33 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 33 of 51

- **Step One: At the Scene of the Accident or Loss**

*You* should take these measures at the scene of the accident or loss:

**(a) Prevent further damage.** *You* should take immediate action to prevent any further damage after the initial accident or loss. This includes reasonable cost for temporary repairs only that may be necessary to protect property. In many cases we will pay for these repairs. These payments are described in the "Extra Benefits" sections of this policy.

If *you* don't take reasonable steps to protect property, *we* don't have to pay for any *ensuing losses* that could have been prevented.

**(b) Obtain all information.** *You* should obtain the names and addresses of all people who were involved in or witnessed the accident or loss.

**(c) Don't pay or agree to pay any damages.** No person covered by this policy should voluntarily take any of these actions:

- make any payments for damages;
- assume any obligations to make payments; or
- pay any money for *medical expenses* except first aid at the scene of the accident or loss.

*We* won't honor any liability *you* assume without *our* consent.

**(d) Keep detailed records.** *You* should keep an accurate record of *your* expenditures, including all bills, receipts and other documents related to the *occurrence*, loss, or any repairs. These records will help *you* prepare the inventory and proof of losses *you'll* have to submit to *us* later.

- **Step Two: Notify Us**

*You* must notify *us* or *our* agent as soon as possible. *Your* notice should include this information:

**(a) Policy identification.** Tell *us* the policy number found on the Declarations Page.

**(b) Names and addresses.** Tell *us* the names and addresses of these people:

- *you*;
- anyone else involved in the accident or loss who is covered by this policy;
- anyone who was injured;
- anyone whose property was damaged; and
- any witnesses.

**(c) Circumstances of the accident or loss.** Tell *us* where, when and how the accident or loss happened.

**In Case of Identity Fraud.** If the loss involved *identity fraud*, *you* must notify the applicable law enforcement agency as soon as possible.

**In Case of Theft.** If the loss involved theft, *you* must notify the police as soon as possible.

**In Case of Unauthorized Credit Card or Bank Card Use.** If the loss involved the unauthorized use of a credit card or bank card, *you* must also notify the credit card company or financial institution as soon as possible.

- **Step Three: Submit All Claims**

For *us* to pay under "Your Property Coverage", "Medical Expenses Coverage" or "Extra Benefits", *you* must submit a formal claim. For *us* to pay under "Personal Liability Coverage", *you* must forward all claims made against *you* or another *insured person*. In this section *we* tell *you* how to submit these claims.

Property Coverage

Send *us* a signed, sworn statement of loss containing the information *we* request to investigate the claim. *You* must do this within 60 days after *our* request. *We* will supply *you* with the necessary forms.

**(a) Cause of damage or loss.** Tell *us* when the damage or loss occurred, and what caused it.

**(b) Who owns the property.** Tell *us* the name and address of the person who owns the covered property. If he or she does not own the property outright, tell *us*:

- what portion of the property he or she owns;
- the name and portion of any other owner; and
- any claims, liens, or other encumbrances on the property.

**(c) Other insurance.** Tell *us* about any other insurance policies or bonds covering the damage or loss.

**(d) Changes during the policy period.** Tell *us* about any changes in the ownership, use or occupancy of the property that took place while this policy was in effect.

**(e) Inventory and proof of losses.** Include an up-to-date inventory with any receipts and other supporting documents *you* have not yet submitted.

Case 1:13-cv-24568-JEM   Document 18   Entered on FLSD Docket 03/13/2014   Page 43 of 61

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 34 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 34 of 51

For a loss to a residence. Give *us* the specifications of the damaged building and a detailed estimate for its repair.

For personal property loss. Give *us* a description of every damaged item, and tell *us* the replacement cost.

Personal Liability Coverage.

Promptly send *us* copies of any notices or legal papers received in connection with the accident. This includes every demand, claim, summons or other process any *insured person* receives.

Medical Expenses Coverage

The injured person (or someone acting on his or her behalf) must submit a signed, sworn claim. The claim should contain this information:

* description of the injury;
* description of the medical treatment and expenses;
* bills, receipts, and other documents supporting the claim; and
* an authorization allowing *us* to obtain his or her medical reports and records.

Extra Benefits

Submit a description of *your* claim within 60 days of the occurrence. Include all bills, receipts and other supporting documents.

* Step Four: Cooperate with Our Defense

*You* and anyone else who is making a claim must help *us* investigate, defend, and settle it. In many cases we'll pay for reasonable expenses incurred while helping *us*. These payments are described in "Extra Benefits".

1. Help Us Substantiate Your Claim

Anyone seeking damages must take these steps to help *us* investigate and prove the claim:

(a) Provide records, documents and proofs. An *insured person* must provide any records, documents or proofs we ask for, and allow *us* to make copies of them.

(b) Exhibit damaged property. An *insured person* must allow *us* to inspect and appraise damaged property before it is repaired or discarded.

(c) Swear under oath. An *insured person* must be willing to submit to examination under oath and sign his or her testimony.

(d) Authorize us to obtain records. An *insured person* must be willing to authorize *us* to obtain any pertinent records. This includes medical reports and other personal documents.

(e) Submit to physical examinations. A person seeking coverage must submit to physical exams as often as we reasonably request. We'll select the doctor and pay for the exams.

2. Participate in Legal Proceedings

Anyone covered by this policy must participate in legal proceedings connected with the coverage. This includes hearings, trials, arbitrations and other proceedings.

(a) Help us prepare. An *insured person* must help *us* prepare for and conduct proceedings, and provide any evidence we ask for.

(b) Attend hearings. An *insured person* must attend all proceedings at *our* request.

(c) Obtain witnesses. An *insured person* must help *us* obtain the cooperation of witnesses, including their attendance at hearings and trials.

(d) Enforce indemnity. An *insured person* must help *us* collect damages or a portion of the liability owed by another person or organization.

GLOSSARY

In this section, we repeat the definitions of every word and phrase we defined in *your* Home Policy.

Bodily Injury means physical harm, sickness, mental anguish or death, including any care required or services lost because of the injury.

Business means a trade, profession, occupation or other activity for which an *insured person* receives more than $2,000 annually in money or other compensation, whether performed on a full-time, part-time or occasional basis. However, *business* does not include:

* volunteer activities for which the only payment received is for expenses incurred to perform the activity;
* providing home day care services on an exchange of services basis with no monetary compensation; or
* providing home day care services to a relative.

Coverage limit means the most we'll pay for a loss, as explained in "How Much We'll Pay". Each type of coverage has its own limit, shown on the Declarations Page.

**Deductible** means the amount of a loss *you're* responsible for. *We'll* subtract this amount from *our* payment. If the *deductible* is larger than the amount of the loss, *we* won't pay anything. *Deductibles* do not apply to personal liability or to *medical expenses*.

**Direct loss** means a property loss caused directly by a particular set of circumstances.

**Domestic employee** means an *employee* of an *insured person* or an *employee* leased to an *insured person* by a labor leasing firm, whose duties include household or domestic services.

**Employee** means an *employee* of an *insured person* or an *employee* leased to an *insured person* by a labor leasing firm, whose duties are other than those performed by a *domestic employee*.

**Ensuing loss** means a property loss caused indirectly by a particular set of circumstances.

**Exclusion** means a particular set of circumstances when *we* won't pay for certain damages or loss.

**Family member** means any of these people, but only if they are residents of *your* household:

- *your* children;
- *your* other relatives; and
- other people under 21 years of age such as wards, who are in the care of *you* or a *family member*.

**Identity fraud** means the act of knowingly transferring or using, without lawful authority, an *insured person's* means of identity in violation of federal law or any applicable state or local law.

**Identity fraud expenses** means:

- costs for notarizing affidavits or similar documents for law enforcement agencies, financial institutions, credit grantors, credit agencies, credit bureaus or similar organizations;
- costs for certified mail to law enforcement agencies, financial institutions, credit grantors, credit agencies, credit bureaus or similar organizations;
- costs for telephone calls to merchants, businesses, law enforcement agencies, financial institutions, credit grantors, credit agencies, credit bureaus or similar organizations;
- loan application fees for re-applying for loan(s) when the original loan application was rejected because the lender obtained incorrect credit information;

- up to $250 per day, not to exceed a total of $10,000, for actual earnings lost as a result of missing work to complete fraud affidavits or meet with legal counsel, merchants, businesses, law enforcement agencies, financial institutions, credit grantors, credit agencies, credit bureaus or similar organizations; or
- reasonable attorney fees incurred for the following, but only if *you* give *us* prior notice:
  - defense of an *insured person* against any lawsuit(s) by merchants, businesses or their collection agencies;
  - removal of any criminal or civil judgments wrongly entered against an *insured person*; or
  - challenge of the information in an *insured person's* consumer credit report or similar records.

**Identity fraud occurrence** means any act or series of acts of *identity fraud* committed by one person or a related group of people.

**Insured person** means any of the people or organizations insured by the coverage in question. Just who this includes varies slightly from coverage to coverage. A summary of *insured persons* can be found in "Who We Insure", at the beginning of *your* Home Policy.

**Insured place** means any of these locations:

- *residences* and outdoor possessions covered by the property coverage in *your* Home Policy;
- new *residences* you acquire during the policy period
- places used in connection with a covered *residence* or outdoor possessions;
- temporary *residences* of *you* or a *family member*;
- vacant land (other than farm land) owned or rented by *you* or a *family member*;
- land where *you* or a *family member* is building a one-family or two-family house to live in;
- cemetery plots and burial vaults owned by *you* or a *family member*.
- places occasionally rented by *you* or a *family member* for any purpose except a *business*, trade or job; and
- for an additional premium, a premises described on the Declarations Page as an additional *residence* rented to others or as an additional *residence* owner occupied.

**Kidnap and ransom expenses means**

- costs for notarizing affidavits or similar documents for law enforcement agencies, financial institutions or similar organizations;
- costs for certified mail to law enforcement agencies, financial institutions or similar organizations;
- costs for telephone calls to law enforcement agencies, financial institutions or similar organizations;
- lost income of an *insured person* resulting from time taken off work to complete affidavits, meet with or talk to law enforcement agencies and/or legal counsel, up to a maximum of $250 per day, not to exceed a total of $10,000;
- reasonable attorney fees incurred by an *insured person* as a result of a kidnap and ransom, but only with prior notice and approval given by *us*;
- costs of travel and accommodations incurred by an *insured person* while attempting to negotiate a kidnapping; and
- fees and expenses of an independent forensic analyst, private investigator or negotiator hired by an *insured person*, but only with prior notice and approval given by *us*.

**Kidnap and ransom occurrence means** any act or series of acts of kidnapping committed by one person or a related group of people.

**Medical expenses means** any of these expenses for *bodily injury* stemming from an *occurrence*:

- fees for doctors, surgeons, dentists and nurses;
- hospital and ambulance costs;
- charges for X-rays and artificial limbs or organs; and
- funeral expenses.

**Nuclear hazard means** any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

**Occurrence means** the accident that causes *bodily injury*, *personal injury*, or *property damage* or loss. It can be a single event or a series of related events.

**Personal injury means** false arrest, invasion of privacy, wrongful eviction or entry, libel, slander or defamation of character.

**Personal property means** any physical object a person owns except real estate and motor vehicles. (But motor vehicles used to maintain a *residence* are considered *personal property* unless they are licensed for road use).

**Plumbing fixture means** sinks, bathtubs, showers, toilets and bidets.

**Policy period means** the period between the starting and ending times shown on the Declarations Page, unless this policy is cancelled by *you* or by *us*.

**Property damage means** physical damage or destruction to property, or the loss of its use.

**Replacement cost means** the cost of replacing property with property of a like kind and quality. We'll pay today's cost for comparable property, even if the property *you're* replacing was old and had gone down in value.

**Residence is** a one or two-family house, condominium, cooperative unit, apartment or any other type of residence *you* own or rent to live in, named on the Declarations Page. *Residence* includes outdoor possessions.

**We, us, our and ours mean** the company named on the Declarations Page.

**You, your and yours mean** each person named on the Declarations Page, and his or her spouse if they live together.

## GENERAL CONDITIONS

This section explains additional terms and conditions that apply to *your* Home Policy.

### 1. OTHER INSURANCE

Under "Your Property Coverage":

- If another insurance policy also covers the loss, we'll pay *our* share of the damages and no more. *Our* share is the proportion of *our* coverage limit to the total of all coverage limits that apply.
- If a home warranty or service agreement also covers the loss, we will pay only the amount that exceeds the amount payable under the home warranty or service agreement.

Under "Your Liability Coverage", we will pay liability or *medical expenses* only in excess of other coverage that applies.

## 2. CHANGES

The terms of this policy cannot be waived or changed except in writing by *us*. We reserve the right to adjust *your* premium because of a change *we* make. If, during the *policy period* or within 60 days before it starts, *we* revise the policy to broaden or extend its coverage without any extra premium, *you* automatically receive the additional coverage on the date *we* implement the change in *your* state. This automatic coverage does not apply if the revision *we* make. Includes both extensions and restrictions of coverage.

## 3. CANCELLATION OR NONRENEWAL

In some states these rules may vary. If other rules for cancellation or nonrenewal apply, *we'll* attach an endorsement to *your* policy.

**(a) Nonrenewal.** *We* may decide not to renew this policy. If *we* do, *we'll* notify *you* at least 30 days before the policy ends. *We'll* mail *our* notice to the address shown on the Declarations Page. Proof of *mailing* is enough proof that *we* notified *you*.

**(b) Cancellation by you.** *You* may cancel this policy during the *policy period* for any reason. Simply mail *us* the policy or a written notice of the date *you* wish the cancellation to take effect.

**(c) Cancellation by us.** If *we* cancel this policy, *we'll* notify *you* in writing. *Our* notice will be mailed to the address shown on the Declarations Page. No other notice is necessary. But *we* may cancel this policy only under one of these circumstances:

* if *you* haven't paid the premium, *we* may cancel with 10 days' notice;
* if the policy has been in effect for less than 60 days and is not a renewal, *we* may cancel for any reason with 10 days' notice;
* if the *policy period* is longer than one year, *we* may cancel for any reason on the anniversary of the starting date, with 30 days' notice; or
* if *you* falsified or concealed any information that would have affected the way *we* wrote this policy, or if the risk has changed substantially, *we* may cancel with 30 days' notice.

**(d) Refund.** If the policy is cancelled, *we'll* refund the unearned premium within a reasonable time. The refund will be calculated pro rata.

## 4. TRANSFER

*You* may not transfer *your* rights or duties under this policy to another person without *our* consent. However, if *you* die, this policy will continue to cover for the rest of the *policy period*:

* *your* surviving spouse, if he or she lived with *you* at the time of death;
* the surviving members of *your* family, while they continue to live with *your* surviving spouse or at a *residence* named on the Declarations Page; and
* *your* legal representative, for obligations assumed in the course of representing *your* affairs.

## 5. LEGAL ACTION AGAINST US

An *insured person* agrees not to sue *us* until he or she has fully complied with the terms of this policy. Nor can *we* be brought into any legal action as a co-defendant or co-plaintiff without *our* consent.

Under "Your Property Coverage", an *insured person* agrees not to sue *us* later than two years after the date of the *occurrence*.

Under "Your Liability Coverage", an *insured person* agrees not to sue *us* before *we* agree in writing that he or she is liable, or a court or arbiter determines the amount of his or her liability.

## 6. MORTGAGES

If a mortgagee is shown on the Declarations Page for any *residence*:

*We'll* pay the mortgagee directly for its share of any damages to a *residence* or another structure on the grounds.

*We'll* notify the mortgagee at least 10 days before the effective date if *we* cancel or decline to renew this policy. The mortgagee's rights won't be affected by any denial of *your* claims. However, to preserve its right to make a claim, the mortgagee must:

* notify *us* of any change in ownership, occupancy, or risk it is aware of;
* pay on demand any premium; and
* submit a signed, sworn proof of loss within 60 days after being notified that *you* failed to do so.

Instead of paying the mortgagee damages that *we* refused to pay *you*, *we* reserve the right to pay off the entire principal and interest due on the mortgage. If *we* do, the entire mortgage will be transferred to *us* along with any securities held as collateral.

## 7. OUR RIGHT TO RECOVER PAYMENT

If *we* pay money to a person under the terms of this policy, that person's right to recover any damages is automatically transferred to *us*. This also applies if *we* make payment to a mortgagee. The person or organization who receives *our* payment agrees to:

- sign papers, deliver documents and cooperate with *our* effort to recover damages; and
- do nothing to jeopardize or interfere with *our* ability to recover damages.

This right does not apply to payments made under:

- Medical Expenses Coverage; or
- Voluntary Payments for *property damage* under Extra Benefits.

## 8. APPRAISALS

If *we* fail to reach agreement with *you* on the amount of a loss, either *you* or *we* may demand an appraisal. The demand must be in writing. This is the appraisal procedure:

**(a) Selecting Appraisers.** Within 20 days after the demand is received, both sides will select a competent, impartial appraiser. The two appraisers will evaluate the loss and try to come to an agreement. If they succeed, that will be the amount of the loss.

**(b) Selecting an Umpire.** If the two appraisers can't agree, they will select a competent, impartial umpire. If they can't agree on an umpire within 15 days, either side can ask a judge in the state where the *residence* is located to select one. Each appraiser will submit a written report to the umpire. The umpire's decision will be the amount of the loss.

**(c) Paying for the Appraisal.** Each side will pay the appraiser it chooses. Both sides will contribute equally to the umpire's pay and other expenses.

## 9. ABANDONMENT

*We* don't have to accept any property an *insured person* abandons.

## 10. BANKRUPTCY

Bankruptcy or insolvency of an *insured person* shall not relieve *us* of any of *our* obligations under this policy.

## 11. CONCEALMENT AND FRAUD

*We* do not provide coverage for any *insured person* who has, either before or after a loss, intentionally concealed or misrepresented any material fact or circumstance relating to this insurance. *We* do not provide coverage in the case of any fraud or false swearing by an *insured person* concerning this insurance.

## 12. NO BENEFIT TO BAILEE

*We* won't pay any money that directly or indirectly benefits a person or organization that is holding, storing or transporting property for money. This rule overrides any conflicting provisions of this policy.

## 13. PAIRS, SETS AND PARTS

Loss to one piece in a pair or set, which can't be used without the missing piece, will be treated as loss to the entire pair or set. However, loss to one part of property consisting of several parts when whole, which is still useable without the missing part, will be treated as loss to that part only.

## 14. SUBSTITUTIONS

*We* reserve the right to repair or replace property *ourselves*, instead of paying with money. If *we* plan to exercise this right, *we'll* notify *you* in writing within 30 days after *we* receive *your* signed, sworn proof of loss.

## 15. RETURN OF STOLEN PROPERTY

If stolen property is recovered and *you* want the property returned to *you*, *you* will return to *us* any payment *we* made to *you* for this item. However, *we* agree to pay for any damage caused by the theft.

## 16. INSURABLE INTEREST

For a property loss, *we* won't pay any *insured person* more than the amount of his or her interest in the property.

## 17. SEVERABILITY

This insurance applies separately to each *insured person*. This rule will not increase *our* coverage limit for any one *occurrence*.

**\*\*THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.\*\***

## FLORIDA HOME ENDORSEMENT

This endorsement changes certain parts of *your* Home policy. Every coverage, *exclusion*, definition and rule that isn't changed by this endorsement remains the same.

*Your* Home Policy is amended as follows:

### PART I: YOUR PROPERTY COVERAGE

The first paragraph is deleted and replaced by the following:

This part of *your* Home Policy covers *you* and *your* family against financial loss if the things *you* and *your* family own are damaged or lost. *We* tell *you* about this coverage in "Residences and Personal Property". The specific items *we* cover in each are described in "What *We* Cover".

### RESIDENCES AND PERSONAL PROPERTY

**A.  YOUR RESIDENCES**

Other Structures is deleted and replaced by the following:

**Other Structures.** *We* cover most outdoor structures on the grounds, whether or not they are attached to the house. A structure is unattached if it is separated from the *residence* by a clear space, even if it is connected by a fence, utility line or something similar.

**B. YOUR PERSONAL PROPERTY**

The first paragraph is deleted and replaced by the following:

*We* cover an *insured person's personal property*. This is any physical object an *insured person* owns except real estate and motor vehicles. (But motor vehicles used to maintain a *residence* or assist the handicapped are considered *personal property* unless they are licensed for road use.) At *your* request, *we* will also cover:

- other people's *personal property* in a residence named on the Declarations Page, except in a part of that *residence* occupied by someone who isn't an *insured person*; and
- *personal property* owned by a guest or domestic employee while it is in any *residence* occupied by an *insured person*.
- Condominiums, Cooperatives, and Apartments

The last paragraph is deleted and replaced by the following:

But it must be property that an *insured person* paid for or acquired at *your* own expense along with the *residence*. And it must be a kind of loss covered by this policy. If the *residence* is a condominium or cooperative unit, the property must be the *insured person's* insurance responsibility under the governing rules of the Condominium or Cooperative Association that benefits the *insured person* and fewer than all unit owners.

**Special Limits for Some Kinds of Property**

**(1)** Money and Precious Metals is deleted and replaced by the following:

**(1)** Money and Precious Metals. *We* won't pay more than $2,500 per *occurrence* for losses to money, bullion, bank notes, scrip, stored value cards, smart cards, gold, silver or platinum.

**(4)** Watercraft is deleted and replaced by the following:

**(4)** Watercraft. *We* won't pay more than $5,000 per *occurrence* for losses to watercraft, including their furnishings, equipment and outboard motors.

**(11)** Business Property is deleted and replaced by the following:

**(11)** Business Property. *We* won't pay more than $25,000 per *occurrence* for losses to property (not otherwise insured) an *insured person* uses primarily for a *business*, trade or job.

The following Special Limit is added:

**(12) Breakage of Fragile Articles.** *We* won't pay more than $50,000 per *occurrence* for the breakage of fragile articles, including but not limited to crystal, china, porcelains, figurines, statues, sculptures, mirrors, wine bottle, glassware and other similar articles. Fragile articles do not include jewelry, watches, cameras and photographic lenses.

## LOSSES WE WON'T PAY FOR

The following paragraph is added to *exclusion (1)* **Earth Movement:**

This *exclusion* does not apply to loss caused by *catastrophic ground cover collapse.*

**(6)** Contamination is deleted and replaced by the following:

**(6) Pollutants.** *We* won't pay for *direct loss* caused by the release, discharge, dispersal or application of contaminants or pollutants from any source. Pollutant means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**(7)** Air Pollution is deleted and replaced by the following:

**(7) Smoke.** *We* won't pay for *direct loss* caused by smoke from agricultural smudging or industrial operations.

The following is added to **(21) Breakage of fragile articles:**

• Water not otherwise excluded.

The following *exclusion* is added:

**(27) Smog.** *We* won't pay for *direct loss* caused by smog.

• **Special Rules for Home Appliances**

The first paragraph is deleted and replaced by the following:

*You* may have a loss caused by certain home appliances breaking down, or not working right. The following rules apply to property loss caused by any of these appliances: heaters, air conditioners, fire protective sprinkler systems, other household appliances, *plumbing fixtures*, and the connecting pipes. *Plumbing fixture* means sinks, bathtubs, showers, toilets and bidets.

**(1)** Leakage and seepage is deleted and replaced by the following:

**(1) Leakage and seepage.** *We* won't pay for *direct loss* to a *residence* or personal property caused by water or steam escaping from one of these appliances or fixtures over a period of weeks, months or years. It doesn't matter whether it escaped continuously or in repeated *occurrences.* However, we will pay for *ensuing loss* to a *residence* if coverage is not excluded by another provision in this policy.

## EXTRA BENEFITS

**E.   LOSS-RELATED EXPENSES**

**(1)** Debris Removal is deleted and replaced by the following:

**(1) Debris Removal.** *We'll* pay reasonable costs for removing debris of covered property resulting from a loss covered by this policy. We will also pay reasonable costs of removing a fallen tree that:

• has caused a loss to a structure covered by this policy;

• blocks a driveway; or

• blocks a ramp or other access way designed to assist a handicapped person to enter or leave the *residence.*

Tree removal does not include the uprooting and removal of tree roots. Tree removal is included in the Debris Removal *coverage limit.*

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

This extra benefit (1) Debris Removal has a *coverage limit* of:

- 30% of the Dwelling limit for the location where the loss occurs; or
- 30% of the Contents Including Additions And Alterations limit for the location where the loss occurs if the *residence* is a condominium, cooperative or apartment.

The amount of coverage for debris removal will not be affected by any increase in the amount of coverage for *your residence* caused by the application of extended coverage limit protection as provided in this policy.

**Tree removal not included in Debris Removal.** *We* will pay up to $1,000 for the removal of fallen trees caused by wind, hail, sleet, or the weight of ice or snow when the tree does not damage a structure or block a driveway or handicap-access way. Tree removal does not include the uprooting and removal of tree roots.

**F.   CONSTRUCTION STANDARDS** is deleted and replaced by the following:

**F.   CONSTRUCTION STANDARDS**

After a covered loss, *we* will pay the cost of conforming to any law or ordinance that regulates the repair, rebuilding or demolition of *your residence* made necessary by the covered loss, including removal of any resulting debris. This extra benefit has a *coverage limit* of:

- for a dwelling, 25% of the Dwelling limit for the location where the loss occurs, or for a condominium, cooperative or apartment, 25% of the Contents Including Additions And Alterations limit for the location where the loss occurs; or
- for an other structure, 25% of the Dwelling limit for the location where the loss occurs, or 25% of the Contents Including Additions And Alterations limit for the location where the loss occurs if the *residence* is a condominium, cooperative or apartment;

The amount of coverage for construction standards will not be affected by any increase in the amount of coverage for *your residence* caused by the application of extended coverage limit protection as provided in this policy.

**J.   LOSS ASSESSMENT** is deleted and replaced by the following:

**J.   LOSS ASSESSMENT**

*We'll* pay up to $100,000 per *occurrence* for *your* share of an assessment charged during the *policy period* against all members in the Condominium, Cooperative, or Homeowners Association. But it must be an assessment for:

- a loss to property owned by the Association; or
- liability resulting from the *deductible* in an insurance policy.

For *us* to pay, it must be a kind of loss or liability covered by this policy, other than earthquake.

*We* will pay no more than $10,000 of a loss assessment that results from a *deductible* or self-insured retention in the insurance purchased by the corporation or association of property owners.

There is no *deductible* for this coverage.

**Policy Period** as described in **YOUR AGREEMENT WITH US**, does not apply to this Extra Benefit. However, if the loss occurred prior to the effective date of the *policy period* in which the assessment was charged and the *residence* was not listed on this policy, *we* will pay a maximum of $5,000 for all assessments for that loss.

## PART II: YOUR LIABILITY COVERAGE

The first and second paragraphs are deleted and replaced by the following:

This part of *your* Home Policy covers *you* and *your* family against financial loss if any of *you* accidentally hurts someone or damages their property. And *we* also cover many *medical expenses* after an accident. All these coverages are described in "What We Cover".

What kinds of damages will *we* pay? For a claim or suit covered by this policy, *we'll* pay damages for which an *insured person* is legally liable for:

* *bodily injury*, which means physical harm, sickness, mental anguish or death, including any care required or services lost because of injury;

* *personal injury*, which means false arrest, invasion of privacy, wrongful eviction or entry, libel, slander or defamation of character; and

* *property damage*, which means physical damage or destruction to property, or the loss of its use.

## LIABILITY AND MEDICAL EXPENSES

Insured places is deleted and replaced by the following:

Insured places. An *insured place* is any of these locations:

* *residences* and outdoor possessions covered by the property coverage in *your* Home Policy;

* new *residences you* acquire during the *policy period*;

* places used in connection with a covered *residence* or outdoor possessions;

* temporary *residences* of an *insured person*;

* vacant land (other than farmland) owned or rented by *you* or an *insured person*;

* land where an *insured person* is building a one-family or two-family house to live in;

* cemetery plots and burial vaults owned by an *insured person*;

* places occasionally rented by an *insured person* for any purpose except a *business*, trade or job; and

* for an additional premium, a premises described on the Declarations Page as an additional *residence* rented to others or as an additional *residence* owner occupied.

## DAMAGES WE WON'T PAY

### A.  CLAIMS FOR PERSONAL INJURY

(5)  Business activities is deleted and replaced by the following:

(5)  Business activities. *We* won't pay damages for any *personal injury* arising out of an *insured person's business*, trade or job. This *exclusion* does not apply to an *incidental business*.

(6)  Contamination is deleted.

(7)  Lead Hazards is deleted.

The following wording is added to *exclusion* (9) Intra-Family Liability:

This *exclusion* also applies to any claim made or suit brought against *you* or *your* family:

* to repay; or

* share damages with;

another person who may be obligated to pay damages because of *personal injury* to an *insured person*.

**B.   CLAIMS FOR BODILY INJURY OR PROPERTY DAMAGE**

(3)  Watercraft accidents is deleted and replaced by the following:

(3)  **Watercraft accidents.** *We* won't pay for *bodily injury* or *property damage* or *medical expenses* arising out of a watercraft:

* that is twenty-six (26) feet or more in length or more than fifty horsepower and which is owned by an *insured person* or furnished or rented to an *insured person* for longer than thirty (30) days;

* used for any *business* or commercial purpose; or

* used for participation in or practice for competitive racing (except sailboats less than twenty-six (26) feet in length).

The term watercraft includes hovercraft whenever used in this policy.

(5)  War is deleted and replaced by the following:

(5)  **War.** *We* won't pay for *bodily injury* or *property damage* or *medical expenses* caused by war. War includes undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act, even if accidental.

The following wording is added to *exclusion* (16) **Intra-Family Liability:**

This *exclusion* also applies to any claim made or suit brought against *you* or *your* family:

* to repay; or

* share damages with;

another person who may be obligated to pay damages because of *bodily injury* to an *insured person.*

(9)  Accidents to off-duty domestic employees is deleted.

(12) Business related accidents is deleted and replaced by the following:

(12) **Business related accidents.** *We* won't pay for *bodily injury* or *property damage* or *medical expenses* arising out of or in the course of conducting a *business*, trade or job, including the rental of land or a building. This *exclusion* does not apply to:

* an incidental *business*; or

* *bodily injury, property damage* or *medical expenses* arising out of the physical condition of *your* residence covered by this policy when *business* or professional activities are legally conducted by *you* or a *family member* in that residence, but only if:

    * *you* or a *family member* do not have any employees involved in the *business* or professional activities who are subject to any workers' compensation, disability benefits, unemployment compensation, or other similar laws;

    * *you* or a *family member* are not a home day care provider; and

    * there is no other valid collectible insurance.

(21)Lead Hazards is deleted.


**EXTRA BENEFITS**

**D.  LOSS ASSESSMENT** is deleted and replaced by the following:

**D.  Loss Assessment.**

*We'll* pay up to $100,000 per *occurrence* for *your* share of an assessment charged during the *policy period* against all members in the Condominium, Cooperative, or Homeowners Association. But it must be an assessment for:

* liability of the Association; or

* liability resulting from the *deductible* in an insurance policy.

For *us* to pay, it must be:

* a liability *occurrence* covered by this policy; or
* an act or series of related acts committed by the organization's officers, directors or trustees while acting in their capacity as such, provided;
  * (1) the directors, officers or trustees are elected by the members of the organization; and
  * (2) the directors, officers or trustees serve without pay.

This coverage applies only to loss assessments charged against *you* as owner or tenant of the *residence*. *We* do not cover loss assessments charged against *you* or a corporation or association of property owners by any governmental body.

**Policy Period** as described in **YOUR AGREEMENT WITH US**, does not apply to this Extra Benefit. However, if the loss occurred prior to the effective date of the *policy period* in which the assessment was charged and the *residence* was not listed on this policy, we will pay a maximum of $5,000 for all assessments for that loss.

### PART III: TERMS AND CONDITIONS

**YOUR RESIDENCES AND PERSONAL PROPERTY** is deleted and replaced by the following:

**YOUR RESIDENCES AND PERSONAL PROPERTY**

For a loss to *your* property covered by this policy, we'll pay the *replacement cost* except as noted below. In the event *we* pay *replacement cost*, it is *your* option whether to repair or replace. *We'll* pay up to *your coverage limit* for each *occurrence*, less *your deductible*. However, if the loss is $50,000 or more, we will waive the *deductible*.

For *personal property*, we will not pay more than the actual cash value for articles that:

* are not maintained in good or workable condition;
* show signs of excessive wear; or
* are outdated or obsolete and are stored or not being used.

**Coverage limits.** On the Declarations Page, *you'll* find a Total Location Limit for each of *your residences*. This limit is the total limit for all real and *personal property* losses, including loss of use, in and around that *residence*. Special limits on certain property apply as described in "Your Property Coverage".

**Personal property.** Which *coverage limit* applies to *personal property*? If the property is at a *residence* when the loss occurs, *we'll* apply the Total Location Limit for that *residence*. If the loss occurs away from a *residence*, we'll apply the Total Location Limit for the *residence* that property is usually kept at. If the property isn't usually kept at a *residence*, we'll apply *your* highest Total Location Limit.

* **Special Feature**

**Extended coverage limit protection.**

We'll pay up to 125% of the Total Location Limit for a covered loss to *your residence*, other structures and *personal property*, including loss of use. However, this extended *coverage limit* protection applies only if *you* had allowed *us* to annually increase *your coverage limit* to keep pace with inflation and construction costs or as a result of a recently completed inspection using an industry recognized appraisal system. We'll also pay for losses to any extensions or new construction *you* added during the *policy period*, but only if *you* had reported them to *us* before the loss.

### WHEN WE'LL PAY

The first paragraph is deleted and replaced by the following:

We'll pay all the money *we* owe *you* upon the earlier of the following:

* within 20 days after *we* receive *your* proof of loss and reach written agreement with *you*; or

* within 60 days after *we* receive *your* proof of loss and there is an entry of final judgment or there is a filing of an appraisal award or a mediation settlement with *us*; or
* With respect to losses under **PART I: YOUR PROPERTY COVERAGE**, within 90 days after *we* receive notice of such claim, *we* will pay or deny such claim or a portion of the claim. However, this provision does not apply if factors beyond *our* control reasonably prevent such payment.

## WHAT TO DO AFTER AN OCCURRENCE OR LOSS

* **Step 4: Cooperate with Our Defense**

The first sentence under **2. Participate in Legal Proceedings** is deleted and replaced by the following:

Anyone covered by this policy must participate, as reasonably possible, in legal proceedings connected with his or her coverage.

## GLOSSARY

**Business** is deleted and replaced by the following:

**Business** means a trade, profession, occupation or other activity, including farming operations, performed in exchange for money or other compensation, whether on a full-time, part-time or occasional basis. However, *business* does not include:

* volunteer activities for which the only payment received is for expenses incurred to perform the activity;
* providing home day care services on an exchange of services basis with no monetary compensation; or
* providing home day care services to a relative.

**Personal property** is deleted and replaced by the following:

**Personal property** means any physical object a person owns except real estate and motor vehicles. (But motor vehicles used to maintain a *residence* or assist the handicapped are considered *personal property* unless they are licensed for road use.)

The following definitions are added:

**Catastrophic ground cover collapse** means geological activity that results in all of the following:

* the abrupt collapse of the ground cover;
* a depression in the ground cover clearly visible to the naked eye;
* structural damage, other than settling or cracking, of a building or other structure insured under this policy, including the foundation; and
* the building or other structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that building or other structure.

**Incidental business** means:

* A *business* activity, other than a farm operation, conducted by an *insured person* that:
  * does not produce more than $10,000 in annual gross revenues;
  * does not involve the employment of others subject to any workers' compensation, disability benefits, unemployment compensation or other similar laws; and
  * conforms to local, state and federal laws.

  This provision includes a *residence* listed on the Declarations Page that *you* own and rent to others.
* A farm operation conducted by an *insured person* on the *residence* that:
  * is incidental to the use of the premises as *your residence*;
  * does not produce more than $25,000 in annual gross revenues from the raising or care of animals or agricultural operations; or
  * does not involve the employment of others for more than 1,250 hours per *policy period*.

Includes copyrighted material of Insurance Services Office, Inc. with its permission   HOME27 ACE-0510

## GENERAL CONDITIONS

**1. OTHER INSURANCE**

The following sentence is added:

However, if, at the time of loss, there is other insurance in the name of a corporation or association of property owners covering the same property covered by this policy, this insurance will be excess over the amount recoverable under such other insurance.

**3. CANCELLATION OR NONRENEWAL** is deleted and replaced by the following:

**3. CANCELLATION OR NONRENEWAL.**

**(a) Nonrenewal.**

  **1.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice, together with the specific reasons for nonrenewal. Proof of mailing will be sufficient proof of notice.

  **a.** If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the insured property has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, then, during the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the insured property, we may elect not to renew this policy only if:

   **(1)** You have not paid the renewal premium;

   **(2)** There has been a material misstatement or fraud related to the claim;

   **(3)** We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

   **(4)** We have paid policy limits.

   We may do so by letting you know at least 45 days before the expiration date of the policy.

  **b.** If the conditions described in Paragraph 1.a. do not apply, we may elect not to renew this policy by providing the following notice before the expiration date of this policy:

   **(1)** If we elect not to renew this policy due to a revision in coverage for sinkhole loss or catastrophic ground cover collapse based on the 2007 changes in the Florida Insurance Laws, we will let you know at least 100 days before the expiration date of this policy;

   **(2)** If Paragraph (1) does not apply and:

    **(a)** The date of nonrenewal becomes effective on or after December 1 and before June 1, we'll let you know at least 100 days before the expiration date of this policy; or

    **(b)** The date of nonrenewal becomes effective on or after June 1 and before December 1, we'll let you know:

     **(i)** At least 100 days before the expiration date of this policy; or,

     **(ii)** By June 1;

     whichever is earlier,

However, if we or our affiliates have continuously insured your property for at least a five (5) year period immediately prior to the date of notice, we will provide you with written notice at least one hundred eighty (180) days before the expiration date of this policy.

      c.  *We* shall be entitled to collect any additional premium required to keep the policy in effect during this period.

         However, this provision (3.(a)1.c.) does not apply if *you* have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occuring during the duration of the extension.

  2.  *We* will not nonrenew this policy:

      a.  On the basis of property insurance claims that are the result of an Act of God, unless *we* can demonstrate, by claims frequency or otherwise, that *you* have failed to take action reasonably necessary as requested by *us* to prevent recurrence of damage to the insured property;

      b.  On the basis of a single claim which is the result of water damage, unless *we* can demonstrate that *you* have failed to take action reasonably requested by *us* to prevent a future similar *occurrence* of damage to the insured property; or

      c.  On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the *occurrence* of such a claim. However, *we* may elect not to renew this policy if:

         (1)  The total of such property claim payments for this policy exceeds the current policy limits of coverage for *property damage*; or

         (2)  *You* have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

  3.  If the date of nonrenewal becomes effective during a hurricane *occurrence*:

      a.  The expiration date of this policy will not become effective until the end of the hurricane *occurrence*; and

      b.  *We* shall be entitled to collect additional premium for the period the policy remains in effect.

         However, this provision does not apply if *you* have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the hurricane *occurrence*.

**(b) Cancellation by you.**

  *You* may cancel this policy during the *policy period* for any reason.  Simply mail *us* the policy or a written notice of the date *you* wish the cancellation to take effect.

**(c) Cancellation by us.**

  1.  If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the insured property has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, *we* may cancel this policy only for the following reasons, with respect to the period beginning from the date the state of emergency is declared to the expiration of 90 days following the repairs to the dwelling or other structure located on the insured property, by letting *you* know in writing of the date cancellation takes effect.  This cancellation notice may be delivered to *you*, or mailed to *you* at *your* mailing address shown in the Declarations.  Proof of mailing will be sufficient proof of notice.

      a.  When *you* have not paid the premium, *we* may cancel during this period by letting *you* know at least 10 days before the date cancellation takes effect.

      b.  If:

         (1)  There has been a material misstatement of fraud related to the claim;

         (2)  *We* determine that *you* have unreasonably caused a delay in the repair of the dwelling or other structure; or

         (3)  *We* have paid policy limits;

         *We* may cancel during this period by letting *you* know at least 45 days before the date cancellation takes effect.

     c.  *We* shall be entitled to collect any additional premium required to keep the policy in effect during this period.

However, this provision, (c)1.c., does not apply if *you* have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

2.  If the conditions described in Paragraph 1 do not apply, *we* may cancel only for the following reasons:

    a.  When this policy has been in effect for 90 days or less, *we* may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

    b.  *We* may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to *you*, or mailed to *you* at *your* mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

      (1)  When *you* have not paid the premium, *we* may cancel at any time by letting *you* know at least 10 days before the date cancellation takes effect.

      (2)  When this policy has been in effect for 90 days or less, *we* may cancel for any reason, except *we* may not cancel:

         (a)  On the basis of property insurance claims that are the result of an Act of God, unless *we* can demonstrate, by claims frequency or otherwise, that *you* have failed to take action reasonably necessary as requested by *us* to prevent recurrence of damage to the insured property;

         (b)  On the basis of a single claim which is the result of water damage unless *we* can demonstrate, that *you* have failed to take action reasonably requested by *us* to prevent a future similar *occurrence* of damage to the insured property; or

         (c)  On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the *occurrence* of such a claim. However, *we* may cancel this policy if:

           (i)  The total of such property claim payments for this policy exceeds the current policy limits of coverage for *property damage*; or

           (ii)  *You* have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

Except as provided in Paragraphs **2.a and 2.b.(1)** of this provision, *we* will let *you* know of *our* action at least 20 days before the date cancellation takes effect.

However, if *we* or *our* affiliates have continuously insured *your* property for at least a five (5) year period immediately prior to the date of notice, *we* will provide *you* with written notice, at least one hundred eighty (180) days before the expiration date of this policy except as provided in Paragraph 2.b.(1) above.

      (3)  When this policy has been in effect for more than 90 days, *we* may cancel:

         (a)  If there has been a material misstatement;

         (b)  If the risk has changed substantially since the policy was issued;

         (c)  In the event of failure to comply with underwriting requirements established by *us* within 90 days of the effective date of coverage;

         (d)  If the cancellation is for all insureds under policies of this type for a given class of insureds;

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 49 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 49 of 51

(e) On the basis of property insurance claims that are the result of an Act of God if we can demonstrate, by claims frequency or otherwise, that *you* have failed to take action reasonably necessary as requested by *us* to prevent recurrence of damage to the insured property;

(f) On the basis of a single claim which is the result of water damage, if we can demonstrate that *you* have failed to take action reasonably requested by *us* to prevent a future similar *occurrence* of damage to the insured property; or

(g) On the basis of filing of claims for partial loss caused by sinkhole damage or clay shrinkage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the *occurrence* of such a claim, if:

(i) The total of such property claim payments for this policy exceeds the current policy limits of coverage for *property damage*; or

(ii) *You* have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

*We'll* provide the following notice:

(a) If the date of cancellation becomes effective on or after December 1 and before June 1, *we'll* let *you* know at least 100 days before the date cancellation takes effect; or

(b) If the date of cancellation becomes effective on or after June 1 and before December 1, *we'll* let *you* know:

(i) at least 100 days before the date cancellation takes effect; or

(ii) by June 1;

whichever is earlier.

However, if *we* or *our* affiliates have continuously insured *your* property for at least a five (5) year period immediately prior to the date of notice, *we* will provide *you* with written notice, at least one hundred eighty (180) days before the expiration date of this policy except as provided in Paragraph 2.b.(1) above.

3. If the date of cancellation becomes effective during a hurricane *occurrence*:

a. The expiration date of this policy will not become effective until the end of the hurricane *occurrence*; and

b. *We* shall be entitled to collect additional premium for the period the policy remains in effect.

However, this provision does not apply if *you* have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the hurricane *occurrence*.

**(d) Refund.**

If the policy is cancelled, *we'll* refund the unearned premium within 15 days after the date cancellation takes effect. The refund will be calculated pro rata.

**(e) Automatic termination.**

If *we* offer to renew or continue and *you* or *your* representatives do not accept, this policy will automatically terminate at the end of the current *policy period*. Failure to pay the required renewal or continuation premium when due shall mean that *you* have not accepted *our* offer.

**(f) Other Termination Provisions.**

*We* may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

If this policy is cancelled, *you* may be entitled to a premium refund. If so, *we* will send *you* the refund within 15 working days after the effective date of the cancellation. The premium refund, if any, will be computed according to *our* manuals. However, making or offering to make the refund is not a condition of cancellation.

The effective date of cancellation stated in the notice shall become the end of the *policy period*.

(g) **Hurricane Occurrence.**

A hurricane *occurrence*, as used in this General Condition:

(1) Begins at the time a hurricane watch or warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

(2) Continues for the time period during which the hurricane conditions exist anywhere in Florida; and

(3) Ends 72 hours following the termination of the last hurricane watch or warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

5.   **LEGAL ACTION AGAINST US** is deleted and replaced with the following:

6.   **LEGAL ACTION AGAINST US**

An *insured person* agrees not to sue *us* until he or she has fully complied with the terms of this policy. Nor can *we* be brought into any legal action as a co-defendant or co-plaintiff without *our* consent.

Under property coverage, an *insured person* agrees not to sue *us* later than five years after the date of the *occurrence*.

Under liability coverage, an *insured person* agrees not to sue *us* before *we* agree in writing that he or she is liable, or a court or arbiter determines the amount of his or her liability.

7.   **OUR RIGHT TO RECOVER PAYMENT**

The following sentence is added:

However, *we* waive any rights of recovery against the corporation or association of property owners of the condominium where the *residence* is located.

8.   **APPRAISALS** is deleted and replaced by the following:

8.   **MEDIATION OR APPRAISAL.**

If *we* fail to reach agreement with *you* on the amount of a loss, either *you* or *we* may:

a.   Demand a mediation of the loss in accordance with the rules established by the Florida Department of Financial Services. The loss amount must be at least $500, before the *deductible* is applied, or the difference between the settlement amount *we* offer and the one *you* request must be at least $500. The mediation settlement is binding only if both parties agree, in writing, on it and if *you* have not rescinded it within 3 business days after settlement is reached. *You* cannot rescind the settlement if the settlement check or draft that *we* gave *you* is cashed or deposited.

*We* will pay the cost of conducting any mediation conference unless *you* fail to appear at it. If *you* fail to appear, the conference will be rescheduled and *you* must pay the mediator's fee for the rescheduled conference. If *we* fail to appear, *we* will pay that fee as well as the actual cash expenses *you* incur in attending the conference.

b.   Demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, *you* or *we* may request that the choice be made by a judge of a court of record in the state where the *residence* is located. The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to *us*, the amount agreed upon will be the amount of the loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of the loss.

Case 1:13-cv-24568-JEM   Document 8-2   Entered on FLSD Docket 01/27/2014   Page 51 of 51
Case 1:13-cv-24568-JEM   Document 5-2   Entered on FLSD Docket 01/06/2014   Page 51 of 51

Each party will:

(i)   pay its own appraiser; and

(ii)  bear the other expenses of the appraisal and umpire equally.

If, however, *we* demanded the mediation and either party rejects the mediation results, *you* are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against *us* for failure to pay the loss.

The following General Condition is added:

### 18. DUPLICATE COVERAGES

If a loss is covered under more than one part of this policy, *we* will pay under the part providing the most coverage, but not under more than one part.

Case 1:13-cv-24568-JEM   Document 8-3   Entered on FLSD Docket 01/27/2014   Page 1 of 1

# BELFOR (O)
## PROPERTY RESTORATION

#*100614809*

**WORK AUTHORIZATION**

Florida Licenses CGC 046432, CGC 1517474,
CGC 8789, CBC 058099
Florida Qualifications QB 25087, QB7868

The undersigned (Insured): *Thomas Kraemer / Adam Miller*

*610 W. Dilido Dr       Miami Beach       FL       33139*

Address          City          State          Zip

represents that he/she/they are owners of/or agents for the hereinafter specified property (and/or its contents) and hereby authorize and direct BELFOR USA Group, Inc. ("Contractor") to provide all labor, equipment and materials required to properly repair the specified real property or structure commonly known as:

*610 W Dilide Dr       Miami Beach       FL       33139*

Address          City          State          Zip

It is understood and agreed that Contractor will perform all repair work in a good and workmanlike manner in accordance with our General Conditions, will have a policy of insurance in full force, will comply with local safety standards and will perform all work according to local building codes. A one-year workmanship warranty will be presented upon full payment for the work performed. The undersigned hereby transfers, assigns and conveys to Contractor his/her/their right, title and interest in and to the insurance policy proceeds and all drafts for work performed or to be performed by Contractor. Accordingly, undersigned authorizes and directs their insurer (named below) to make BELFOR USA a payee on all insurance drafts for all insurance work performed by Contractor on the above damaged property. The undersigned also agrees to immediately endorse and tender all drafts as produced to the Contractor.

If this job is performed on a rate and material basis, the undersigned agrees to the rates and terms of BELFOR's National Rate Schedules (Attached as "B"). All uninsured code-upgrade work, remodeling, extra work, depreciation and insurance deductibles are the responsibility of the undersigned company or Owner. The undersigned also agrees to and understands the General Conditions stated below. All insurance work performed by the Contractor is subject to the terms of the insured policy of insurance which sets the scope and price of the work based upon industry standards. The undersigned has the right to cancel this Work Authorization prior to the midnight of the 3rd business day of signing this agreement by writing and delivering a written cancellation request to Contractor by such time. The undersigned also agrees to and understands the General Conditions stated below.

Contractor and the undersigned Owner, in accordance with the Statutory Laws in the State of Florida, add the mandatory disclosures to the Contract between the parties on the following pages to advise you of certain statutory provisions in the State of Florida.

$ *TBD*                          *4/2/13*
AMOUNT (IF KNOWN)          DATE          INSURED-OWNER-AUTHORIZED REPRESENTATIVE

BELFOR REPRESENTATIVE          INSURED-OWNER-AUTHORIZED REPRESENTATIVE

*Ace*                          *268035868*
INSURANCE COMPANY          POLICY NUMBER

**EXHIBIT 2**

## General Conditions

Owner agrees to allow timely inspections by municipal inspectors and/or mortgage company agents and to assist with obtaining any third party payee signatures on all insurance drafts so that BELFOR can be timely paid. If for any reason your claim is denied by your insurance carrier or they refuse to pay the costs of any and/or all insurance work performed by Contractor, or you otherwise delay or prevent the payment of said insurance draft, or use it for other purposes, then the insured/owner(s) of the above mentioned property will be personally liable for all costs of services performed. The Contractor and undersigned acknowledge and agree that the Contractor shall have no liability for, and shall be indemnified and held harmless from and against, all claims, damages, liabilities and costs arising out of or relating to the presence, discovery, or failure to discover, remove, address, remediate or cleanup environmental or biological hazards including, but not limited to, mold, fungus, hazardous waste, substances or materials, or asbestos unless covered by the insured's policy of insurance, remediation is part of the scope of work and such work is directed by an Industrial Hygienists protocol and clearance testing. If for any reason the amount due under this Work Authorization is not paid when due, the Contractor shall be entitled to its expenses and attorneys fees incurred in its collection of this agreement with interest on the unpaid balance at the rate of 1.5% per month or the rate prescribed by law. The undersigned permits Contractor to obtain a personal credit report to ensure that the insurance proceeds for this project are not in jeopardy. Any controversy or claim arising out of or relating to this agreement, or breach thereof, may be submitted to a court of competent jurisdiction. Contractor is in good standing with the Better Business Bureau. Contractor reserves their right to terminate this contract should the client breach any of its terms or the assurance of payment.          8/12

BELFOR USA 1620 S, Powerline Road, Suite A, Deerfield Beach, FL 33442 • 800.421.4110 • ph: 954.596.8989 • fx: 954.596.5155
BELFOR USA 7100 TPC Drive, Suite 450, Orlando, FL 32822 • 800.421.4117 • ph: 407.886.6970 • fx: 407.886.6977
BELFOR USA 5433 West Crenshaw Street, Tampa, FL 33694 • 800.800.3473 • ph: 813 396.3473 • fx: 813 306.8469
HEADQUARTERS 185 Oakland Ave., Suite 180, Birmingham, MI 48009-3433 • 888.421.4111 • ph: 248.594.1144 • fx: 248.594.1133
24/7 emergency hotline 800.856.3333 • www.belforusa.com